AUSTIN W. BENTON vs. INHABITANTS OF BROOKLINE.

Norfolk.    March 20, 21, 1889. — February 28, 1890.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Widening of Way — Assessment of Damages — Set-off of Benefits — Betterments — Enhanced Value from Prospective Improvement — Evidence — Experts.*

Damages for taking land for the widening and improvement of a way are to be based upon the value of the land regardless of the widening, and are not to include any enhanced value due to the contemplated improvement.

On the assessment of damages under § 3 of the betterment act, (Pub. Sts. c. 51,) for the taking of land for widening a way, special benefits resulting from the widening are not to be set off against damages, but are, under § 1, to be separately assessed; and evidence of such benefits or advantages is inadmissible.

If buildings standing wholly or partially on land taken for widening a way may properly and reasonably be removed therefrom by the landowner, the expense of removal is a proper element of damage in assessing his damages, as bearing upon which evidence of the actual, reasonable cost of removing them is competent.

A real estate dealer in a city, operating in land upon streets leading towards or into a suburban town, who, though somewhat familiar with prices and sales of land in such town, has never lived, bought, sold, or owned land there, or estimated the values of particular lots there as the basis of business transactions, is not qualified to testify as an expert to the value of land in such town taken for the widening of a way, although he has frequently driven past the land and is familiar with it and has conversed with the owner, without having gone upon the land or into the buildings.

An expert as to the value of land taken by a town for widening a way cannot testify in regard to awards of damages for the taking of other land for the same widening, in which he participated as one of the selectmen.

PETITION · to the Superior Court for a jury to assess the damages for the taking of land of the petitioner by the respondent, under the St. of 1887, c. 18, for the widening of Beacon Street in Brookline. Trial in the Superior Court, before *Blodgett*, J., who allowed a bill of exceptions, in substance as · follows.

There was evidence tending to prove the following facts. The petitioner's estate was situated at the corner of Beacon Street and Marion Street in the respondent town, and contained about 45,000 square feet, on which were situated two dwelling-houses and a stable. The portion of the estate taken for the widening consisted of about 30,134 square feet fronting on Beacon Street, one of the houses and the stable standing wholly on such portion. The other house stood in part upon the land taken, and in part upon the remaining land of the petitioner. The widening was made by the selectmen of the town, by a location declaring that the same was made under the betterment act, which location and an accompanying plan were duly filed in the office of the town clerk on March 21, 1887, and were duly accepted and allowed by the town at a meeting held on March 29, 1887.

The petitioner offered evidence tending to show that the project of widening Beacon Street was very generally discussed prior to the time of the widening, and as far back as the spring or summer of 1886, that a plan of the same was exhibited at public hearings before the selectmen, and that the agitation of the subject caused an enhancement of value of all the land on the line of the widening, and doubled in value the land taken from him; and contended that, in assessing the damages resulting to him from the widening, the jury should be permitted to take into account the enhanced value of his land due to the contemplated improvement.

The respondent offered evidence tending to show that the petitioner's remaining land, which was not taken, received a direct, special, and peculiar benefit by reason of the widening, which was not shared by the other abutters on the line of the street; but the petitioner, although admitting that his remaining land, consisting of about 15,177 square feet, was not injured by the widening, contended that, as the location was under the

betterment act, the respondent was not entitled to any allowance for betterments, if there were any; and the judge so ruled, and excluded the evidence, and the respondent excepted.

The selectmen in the location accorded to the owners of land taken for the widening, including the petitioner, four months from the date of the location in which to remove their buildings and other property. The petitioner availed himself of this right, and removed all of his buildings and placed them upon his remaining land. The petitioner, in addition to evidence of the value of the buildings to be carried away, was permitted, against the respondent's objection, to introduce in evidence the actual and reasonable cost to him of removing such buildings and of setting them up upon his remaining land, without taking into account the expense of various improvements made by him in the buildings in so doing for his own comfort.

One Moore was called by the petitioner, as an expert on the value of land, and testified that he lived in Boston and had never lived in Brookline; that he had been a large operator in real estate for twenty to twenty-five years; that he had never bought, sold, or owned land in Brookline, that he had been for many years in the habit of driving by the petitioner's land, and was familiar with it, although he had never been on it and had never been in the petitioner's houses; that he rode by the property on an average, during the spring and fall, of perhaps three or four times a week; that when he had been riding by there he had stopped and conversed with the petitioner; that he had tried to make himself familiar with the values of real estate in Boston and vicinity; that he had had no experience with regard to buying and selling in Brookline, or knowledge of sales, as he had never bought and sold there; that he always made up his opinion regardless of anybody else if he bought or sold, and he had bought and sold land thousands of miles from where he resided, and depended on his own judgment; that he had been somewhat familiar with prices and sales in Brookline, — that is, in some parts of it, — but not very much, because his operations had been confined almost entirely to the city of Boston; that, as a matter of fact, he never did estimate the value of any particular piece of land as the basis of a business transaction in Brookline; that he never had any occasion to do

so; that, if he had been going to purchase, he could have made up his mind very quick whether the property was worth the price asked; and that he had looked at some property in Brookline for the purpose of purchasing, but had never purchased. In answer to questions put to him by the judge, he said: "I first commenced on Columbus Avenue in Boston. I have purchased and held, either alone or in connection with another gentleman, most of the land for some three hundred feet below Dartmouth Street in Boston almost up to Chester Park on the northerly side of Columbus Avenue, very nearly down to the Boston and Providence Railroad. I have also owned land on the other side of the avenue. Then my next purchases were on what is now Huntington Avenue, which is a thoroughfare leading out towards Brookline. I have owned 1,242 feet front on that avenue; also on Beacon Street in Boston, almost out to Chester Park, — corner of Hereford and Beacon Streets. But I have looked upon Beacon Street and Commonwealth Avenue, and the embankment and Huntington Avenue, as the great avenues of the future, upon which there would be a large increase." This was all the evidence bearing upon the qualification of the witness as an expert. The respondent objected, that Moore was not shown to be qualified to testify as an expert to the value of the land in question; but the judge overruled the objection, and permitted the witness to testify as such to the value of the land; and the respondent excepted.

The respondent offered as a witness one James, who was a member of the board of selectmen of the respondent town at the time of the widening, and signed the reports and awards made for damages to the owners of the land taken, which reports and awards were in evidence. After testifying as an expert to the value of the petitioner's land and buildings, he was permitted on cross-examination, against the respondent's objection, to testify in regard to the awards of damages made by the selectmen to the owners of other land taken for the same widening, and as to the reasons which guided him in making particular awards; and the respondent excepted.

The respondent was permitted to put in evidence the price paid by one Hutchinson for his land, a part of which was taken for the same widening, as a sale of land similar to that of the

petitioner, and as having a tendency to prove the value of the petitioner's land taken for the widening; but the bill of exceptions did not recite what this price was. The petitioner was then permitted to ask one Lincoln, also a witness for the respondent, on his cross-examination, whether Hutchinson had not put a valuation of $40,000 on his land. The witness replied, that he did not remember what Hutchinson said, except that he put a high price upon his land.

The respondent asked the judge to give the following instructions to the jury:

"1. If the jury find that the agitation of the proposed widening of Beacon Street as since made, and the prospect that the widening would be made as since made, caused a rise in land along Beacon Street, including the lands of the petitioner, the jury are not authorized to assess the land taken as enhanced by the prospect that the widening would be made, for the reason that the land taken would necessarily be included in the street as widened.

"2. The jury, in estimating the petitioner's damages, must estimate his land as it was before the improvement was decided upon. .

"3. The jury, in estimating the petitioner's damages, must value the land taken as it would have been at the time of the taking if the improvement were not made at all.

"4. The town cannot legally be held liable to pay, for land needed for the widening, the enhanced price which land upon the street would be worth after the widening, and by reason thereof.

"5. If the agitation of the widening of the street caused a speculative rise in lands along the street at and before the time of the actual widening by the town, this rise could never have been logically applied to the land actually to be taken, for that land had to be a part of the street in order to carry out the plan, and hence could be of no use to any individual.

"6. Land which had necessarily to be taken for the improvement could not be improved, even in speculative value, by the agitation of the subject of the widening before the widening was consummated, as such land would be part of the street itself after the widening, and of no use to any individual.

" 7. The petitioner, Benton, having removed his buildings from the land taken upon his remaining land, is not entitled to have his damages assessed upon the theory that the buildings were only valuable to be sold for removal to some other lot; and the jury, in assessing his damages, must consider the value of the buildings in connection with the petitioner's remaining land, in view of the fact that he could remove them upon such remaining land at any time within four months from March 21, 1887, and did so remove them."

The judge refused to give these instructions, but instructed the jury, among other things, that they were to estimate and find the values of the property taken at the fair market values as they stood at the time when the property was taken, which was agreed and assumed by both counsel to be March 21, 1887, and not what the property was worth to the petitioner ; that he was entitled to recover only what the property taken was fairly worth in the market, and the market value, just as it was on March 21, 1887, with the buildings, the trees, the shrubbery, and the improvements that were thereon, bearing in mind that the market value was to be determined considering the adaptability of the land for any advantageous use to which it might be applied ; that, after determining that question, they might proceed to inquire what deduction should be made from that sum because of the right secured to the petitioner by the statute, of which he availed himself, to remove from the land taken the buildings standing thereon ; that those statutes provided that in laying out highways the owner of the land should have a reasonable time within which to remove trees and buildings upon the land, and that it appeared in this case that the petitioner was allowed four months for this purpose ; that, in determining what that right was worth to the petitioner, they should say, upon all the evidence, what deduction should be made from the sum at which they arrived as the total market value of the 30,134 feet, including the buildings ; that if they were satisfied, upon all the evidence in the case, and having in view the testimony that the petitioner's land was in fact enhanced in market value — in other words, that it could have been sold at a higher price — because of this contemplated improvement and the discussion in the community as to the change to be made in Beacon

Street, the petitioner was entitled to have that fact considered in estimating his damages; that it was a question of fact, to be determined by them, whether the scheme as contemplated would take the lands of the petitioner, and they would say, if the understanding was that the petitioner's lands were to be taken in fact, whether that discussion would affect the market value of the petitioner's land one way or the other, and determine upon all the evidence in the case what weight they should give to that fact, if they found it to be a fact, that it did enhance the value of other lands in the neighborhood ; that they would consider what was known, and whether it was believed that the petitioner's land was to be taken, as it was thereafter in fact taken; and that it might be, if there was an uncertainty as to where the widening would be, and what lands would be taken, that they would be justified in finding that all lands in that vicinity upon the line of the street would share in the appreciation of market value.

The jury returned a verdict for the petitioner in excess of the sum awarded as his damages by the selectmen, and largely. in excess of the sum which the respondent contended at the trial should be awarded to him; and the respondent alleged exceptions.

The case was argued at the bar in March, 1889, and afterwards was submitted on the briefs to all the judges.

*M. Williams & C. A. Williams*, for the respondent.

*A. A. Ranney*, (*A. Blume & F. Ranney* with him,) for the petitioner.

W. ALLEN, J. The town of Brookline was authorized by the St. of 1887, c. 18, to alter and widen Beacon Street, a highway in that town. The proceedings, except when otherwise expressly provided by the act, were to be according to the laws applicable to the alteration of town ways, and might be declared to be under the general laws authorizing the assessment of betterments. The location was duly made by the selectmen, and accepted by the town, under the laws authorizing the assessment of betterments. The petitioner had an estate on Beacon Street containing about forty-five thousand square feet of land, on which were two dwelling-houses and a stable. About two thirds of the land, and two of the buildings and a part of the other,

were within the location. This is a petition for the assessment
of damages occasioned by the taking. The Pub. Sts. c. 51, § 3,
provide that, "in estimating such damages, the value of all build-
ings on the land a part of which is taken shall be included, and
there shall be deducted therefrom the value of the materials
removed, and of all buildings or parts of buildings remaining
thereon ; and the damages for land taken shall be fixed at the
value thereof before such laying out, alteration, or widening."
Under the instructions of the court, the damages were ascer-
tained by finding the market value of the thirty thousand feet
of land taken, with the buildings upon it, and deducting there-
from the value of the right of the petitioner to remove the build-
ings. No objection was made by either party to this rule of
damages, and we have occasion to consider only whether objec-
tions made to the application of it are valid.

There was evidence tending to show that the widening and
improvement in Beacon Street had been in contemplation, and
had excited a good deal of attention and discussion, for nearly a
year before the final location of the widening, and that this had
increased the market value of lands bounding on the street, and
had doubled the market value of the petitioner's land. There
was conflicting evidence in regard to this. This evidence was
relied on by the petitioner to prove the value of the land to be
allowed as damages. The respondent asked instructions to the
effect that the jury should find the value of the land as if the
street had not been widened, and not the price of it as enhanced
by the expected improvement. The court instructed the jury
to the effect that they were to find the market value when the
land was taken, and, if they found that the land was enhanced in
value because of the contemplated improvement, the petitioner
was entitled to have that considered in estimating his damages,
and this although they should find that the scheme and plan of
the improvement contemplated taking the land. The court left
the jury at liberty to find that a project of taking the petitioner's
land for improving the street increased the value of the land
to be taken, and to take such increased value as the measure of
damages. They should have been instructed that they should
not allow any increase in value of the land which arose from the
expectation that it would be taken for a public use. But if the

instructions were intended to apply to the case that the plan of improvement did not define the land that should be taken, they would still be objectionable. When the location was finally made, it designated the land, the taking of which could not increase its own value, and the value of which "before such laying out, alteration, or widening" was to be fixed.

The meaning of the statute is, that damages shall be based upon the value of the land unaffected by the improvement. The language of the original statute was: "In estimating the value of the land cut off for said purposes, the land so cut off shall be estimated at its value before the laying out, widening, . . . or other alteration, and such estimate shall not include the increased value occasioned merely by such laying out." St. 1866, c. 174, § 2. St. 1868, c. 75. When this statute was revised by the St. of 1871, c. 382, the language was changed to that re-enacted in the Public Statutes. The damage and the betterment from the widening are both to be estimated as of the time of the location, and are both predicated upon the value of the land before it was affected by the widening. It is not reasonable to construe a statute which authorizes assessments upon benefits from the laying out of a way, or gives damages upon a value before the laying out, to refer to the formal record location. The benefit and the increased value arise from the expected construction of the way. The location does not construct it, but only renders its contemplated construction more probable. Its location and construction may be so assured before the location that the formal location may make no appreciable difference in the market value of land affected. It would be as reasonable to hold that there could be no assessment for betterments because the increase in market value from the expected construction of the way accrued in anticipation of the record location, as it would be to hold that such increase could be allowed in damages for land taken. *Cobb* v. *Boston*, 112 Mass. 181.

There is another consideration which applies to the case at bar, and to all ways laid out by towns. The statute requires that the location of town ways shall be made by the selectmen or road commissioners, and reported to the town, and accepted in town meeting, and that notice shall be given to owners of

land affected, and the location be filed in the town clerk's office at least seven days before the meeting at which it is accepted. Pub. Sts. c. 49, §§ 67, 71. Apart from the particular evidence in the case that the proposed plan for widening the street included the petitioner's land that was taken, the precise alteration, with the bounds and measurements, was given to the public more than seven days before the location. If before such filing any uncertainty as to the lines of the alteration and as to what particular land of the petitioner would be taken may have permitted a value on account of the improvement to be put upon some of the land taken, such value could not have continued after notice to the landowners and to the public of the exact location. After that, any increased value of the land taken on account of the prospect that the widening would be made must have been merely speculative and fictitious. The public, as well as individuals interested, then knew the fact that, if the street was widened, the land would be taken, and such land must have lost any market value which it may have acquired from the expectation that it would be benefited by the widening. If the vote of the town was the widening intended by the statute, then the value immediately before that vote was the value intended. Upon the undisputed evidence it was not competent for the jury to find that, at the time the vote was taken in town meeting accepting the location of the widening, the land of the petitioner taken by it was increased in value by the contemplated widening.

The respondent offered to prove that the petitioner's remaining land received a direct, special, and peculiar benefit by reason of the widening of the street, which was not shared in by other abutters on the street. The court ruled that it was not competent for the respondent to show such benefit, and excluded the evidence. This ruling excluded proof of benefits to the remaining land, which would have been competent in proceedings under the general highway act, and must rest on the proposition that, in proceedings under the betterment act, benefits cannot be set off against damages, but can be considered only in the assessment of betterments. We think that this ruling was right.

The general highway act, (Pub. Sts. c. 49,) which is a re-enactment of long existing statutes, provides, in § 16, that, in

estimating the damage sustained by altering a highway, " regard shall be had to all the damages done to the party, whether by taking his property or injuring it in any manner; and there shall be allowed, by way of set-off, the benefit, if any, to the property of the party by reason thereof." Under this statute, the general rule of damage consequent upon the taking of a parcel of land for a public way is the diminution in value of the whole land in consequence of taking a part; and in estimating that, any increase in value of the part of the land not taken caused specially by the new and altered way is to be considered. The general benefit to the community, and through that to the landowner, from new or better roads, is not regarded; but any increase in value to the land from the fact that it lies upon a new or improved way, or is directly benefited by the improvement, is a special or particular or direct benefit to be offset against the damages, although all other landowners on the way may be benefited in the same manner. *Allen* v. *Charlestown*, 109 Mass. 243. *Abbott* v. *Cottage City*, 143 Mass. 521. If the benefit exceeds the damages, so that the remaining land is more valuable on account of the improvement than the whole was before it, the owner can recover no damages, but there can be no assessment on account of benefits. The owner along whose land the way is laid out, or whose land is on the side of a street opposite to that on which the street is widened, may enjoy similar and greater benefits than his neighbor whose land is taken, but he cannot be called on to contribute to the expense; while he whose land is taken is charged with the whole amount of the benefit to him which is not in excess of the damage to him.

The betterment act, (Pub. Sts. c. 51,) which applies to public ways declared to be laid out under its provisions, and which is not in force in towns unless accepted by them, authorizes the expense of laying out or altering ways to be assessed upon the estates thereby benefited. Under this act, by § 1, if " any real estate, including that a part of which is taken therefor, receives any benefit and advantage therefrom beyond the general advantages to all real estate in the city or town," the value of the benefit or advantage shall be determined, and a proportional share of the expense of the way be assessed upon the same, but no assessment shall exceed one half of the amount of the ad-

judged benefit. The obvious and express intention of the statute is to require all lands benefited to contribute proportionally to the benefit, the residue of land part of which is taken equally with the other land. It would be against the intention of the statute to require the owner of one parcel of land benefited to pay the whole amount of the benefit under the guise of offset to damages for land taken, and to restrict the payment by another similarly benefited to one half the amount of the benefit, because he has sustained no damage. The statute expressly puts the two upon the same footing, and applies to them the same rule, and impliedly, if not expressly, prohibits the application of any benefit or advantage which may be assessed as a betterment by way of set-off to damages.

Section 3 prescribes the rule of damages. After providing that the assessment shall include all damages for land or buildings taken, it provides that " the damages for land taken shall be fixed at the value thereof." This is substantially, if not precisely, the rule under the highway act, without the provision for setting off benefits. By the value of the land taken is not meant its market value as a separate lot, but its value as part of the whole land, and that is measured by the value which its taking abstracts from the value of the whole land. The damage done to the remaining land by taking from it the part is an element of value in the part taken, and the expressions in the highway act, " all the damages, . . . whether by taking his property or injuring it in any manner," and in the betterment act, " damages for land taken shall be fixed at the value thereof," have ordinarily, as regards land taken, the same meaning. *Edmands* v. *Boston*, 108 Mass. 535. *Bancroft* v. *Boston*, 115 Mass. 377.

The damages under the two acts are substantially the same. Under the one, benefits are set off against damages; under the other, they are separately assessed. It is obvious that benefits which have been set off against damages cannot be also assessed as betterments; and that either no benefits which can be set off against damages can be assessed as betterments, or that in any assessment for betterments it must be competent to prove what benefits had been set off against damages. The St. of 1871, c. 382, expressly provided that, in making assessments for betterments in certain cases, allowance should be

made for any benefit set off against damages; and under that provision it has been held that benefits, within the meaning of the word in the highway act, can be set off against damages, and that only benefits which cannot be set off against damages can be assessed as betterments. *Upham* v. *Worcester*, 113 Mass. 97. *Green* v. *Fall River*, 113 Mass. 262. It is held in other cases, that in proceedings under betterment acts benefits cannot be set off against damages. *Godbold* v. *Chelsea*, 111 Mass. 294. *Bancroft* v. *Boston*, 115 Mass. 377. *Prince* v. *Boston*, 111 Mass. 226. *Edmands* v. *Boston*, 108 Mass. 535. *Boston Seamen's Friend Society* v. *Boston*, 116 Mass. 181. The apparent conflict between these classes of cases arises from the fact that they were decided under different statutes. The difference is between the St. of 1866, c. 174, under which the latter cases were decided, and the St. of 1871, c. 382.

A careful examination of the statutes makes apparent the intention that all benefits which may be offset against damages under the highway act shall be assessed as betterments under the betterment act, and that in cases of ways laid out under the latter act benefits cannot be set off against damages. The St. of 1866, c. 174, was a special betterment act, limited to the city of Boston. By the St. of 1868, c. 75, that statute was extended to all cities in the Commonwealth which should accept it. This latter statute authorized assessments for betterments on estates abutting on streets laid out or altered under the act which received any benefit or advantage therefrom. The St. of 1868, c. 276, provided that, when a street should be laid out or altered in the city of Boston, betterments might be assessed when "any real estate, including any a part of which may have been taken for such purpose, shall receive any benefit and advantage therefrom beyond that general advantage which all real property in the said city may receive therefrom," and repealed the section in regard to the assessment of betterments in the St. of 1866, c. 174. Under these statutes, the assessments for betterments were to be made by the same body which made the location and assessed damages. They did not apply to ways laid out or altered by the county commissioners. *Chase* v. *Worcester*, 108 Mass. 60. The St. of 1869, c. 169, extended the provisions of these acts to all towns accepting them, assessments in towns to

be made by the selectmen, and contained this provision, then for the first time enacted: " Provided that the assessments authorized in said acts may be made when highways or town ways are laid out . . . within any town by or under the order of the county commissioners ; and in any such case, due allowance shall be made for any benefit set off under the provisions of " § 16 of the then general highway act (Gen. Sts. c. 43). The St. of 1871, c. 382, was a revision of these statutes, and repealed them. It applied to cities and to towns which should accept it, or which had accepted the former act. It authorized city or town officers empowered to lay out ways to assess benefits for the laying out of any way ; that is, the selectmen of a town might assess benefits for the laying out of a highway by the county commissioners. The assessment might be made at any time within two years from the laying out, etc., and no order or notice of intention to assess betterments was required. It might, therefore, be left uncertain for two years after land was taken whether it was to be assessed for betterments. The Gen. Sts. c. 43, § 14, (Pub. Sts. c. 49, § 14,) required the county commissioners when they laid out or altered a way to assess the damages, and, in § 16, to make allowance for benefits.

If benefits which could be set off against damages by the county commissioners were not such as could be assessed as betterments, there was no occasion for any further provision in the matter ; but if the benefits which could be set off against the damages were such as were to be assessed as betterments, while in relation to ways laid out by municipal officers there would be no difficulty, as the same body which assessed the damages also determined whether the proceeding should be under the betterment act and made the assessment for betterments, in the case of ways laid out by the county commissioners, who could not determine whether the proceedings were under the act, there was an obvious necessity for some further provision. The commissioners might not know when they laid out the way and assessed the damages — no one might know for two years — whether there was to be an assessment for betterments ; and the consequence would be that the benefits that the landowner was charged with when the damages were assessed might be again charged against him as betterments to be

assessed. It was because benefits which might be offset against damages under the highway act were benefits to be assessed under the betterment act, that the provision referred to in *Green* v. *Fall River, ubi supra,* was inserted in the St. of 1869, c. 169, and in the St. of 1871, c. 382, § 1. In the latter statute it is in these words: " In case of laying out a highway or town way by county commissioners, due allowance shall be made for any benefit set off under the provisions of " the Gen. Sts. c. 43, § 16.

The St. of 1874, c. 275, § 2, provided that every highway or town way thereafter laid out should be deemed to be laid out under the general highway act, unless the order laying it out should expressly declare it to be under the betterment law. Under this statute, betterments could not be assessed unless the way was laid out under the betterment act, and county commissioners when they assessed damages would know under which act the way was laid out and the damages were to be assessed. As there was no further occasion for the provision referred to, it was dropped out in the re-enactment of the statute in the Pub. Sts. c. 51, § 1.

We think that the construction which was given to the St. of 1866, c. 174, § 5, that all benefits and advantages which can be set off against damages under the highway act are to be assessed as betterments, is to be given to the Pub. Sts. c. 51, § 1. The language of the former statute, as originally enacted, was " any benefit and advantage from such laying out," etc. This was changed by the St. of 1868, c. 276, which provided for assessing any real estate benefited, into the form preserved in the St. of 1871, c. 382, § 1, and in the Public Statutes; viz. " any benefit and advantage therefrom beyond the general advantages to all real estate in the city or town." The construction of the Pub. Sts. c. 51, which follows the St. of 1866, c. 174, in being made applicable only to ways laid out under its provisions, cannot be affected by the provisions of the St. of 1869, c. 169, or of the St. of 1871, c. 382, which authorized an assessment for betterments by municipal officers after a public way had been laid out and damages therefor assessed by the county commissioners under the general highway act, and directed that in such cases allowance should be made for benefits which had been set off

against damages. The cases decided under the statute of 1866, and not those decided under the exceptional feature of the statutes of 1869 and 1871, furnish the rule for the construction of the provisions of the Public Statutes.

The respondent excepted to the refusal to instruct, and to the instructions given, in regard to the manner of ascertaining the damages to the buildings, and to the admission of certain evidence to prove such damages. The taking was not strictly of the buildings themselves, but of the land and of the right to have the buildings removed from it. The public acquired no right to appropriate the buildings to the public use; they remained the property of the owner. If he did not remove them, the selectmen could care for them, or remove them for the owner's use and at his expense, or sell them on his account, to be removed from the land. Pub. Sts. c. 49, § 17. The statute method of ascertaining the damages to the buildings is by finding the value before the taking of all the buildings on the whole of the land part of which is taken, and deducting from it the value after the taking of the buildings or parts of the buildings on the land not taken, and the value for removal of the buildings and parts of buildings on the land taken. Thus, to find the damage to the petitioner's buildings, there would be deducted from the value of all the buildings before the location the value of the part of the building on the land not taken, in the condition in which it was left by the taking, and the value of the other part of that building and of the other buildings as materials to be removed. The value, of course, would be determined by the use to which the buildings or materials could be put. If, as appears to have been the case with the petitioner's buildings, they could all be moved and set up as buildings on the land not taken, and that was the reasonable and proper use to put them to, the expense of moving them would be one element in determining their value, the other element being the difference in value between the old and the new buildings. The expense of removal is not what the actual cost may prove to be, but what it should be estimated at the time of the taking; and to aid in this estimate, it is competent to prove what the actual reasonable cost of removal proved to be. This, we understand, is what was admitted by the court. See *White* v. *Foxborough*, *ante*, 28.

The cost of improvements made in the buildings ought not to have been, and was not, included in the expense of removing them.

It does not appear that the witness Moore showed sufficient qualification to give an opinion of the value of the petitioner's land.

The questions put to the witness James, on cross-examination, in regard to awards of the value of lands made by him as one of the selectmen, should not have been allowed. *Phillips* v. *Marblehead*, 148 Mass. 326.

The question put to the witness Lincoln, in regard to declarations of the witness Hutchinson, is not shown to have been competent, but the answer seems to have been immaterial.

*Exceptions sustained.*