OSCAR B. MOWRY & another, trustees, *vs.* CITY OF BOSTON.

Suffolk.    March 27, 28, 1899. — May 19, 1899.

Present: HOLMES, KNOWLTON, MORTON, LATHROP, & HAMMOND, JJ.

*Land Damages — Event determining Time of Assessment — Increase in Value between Passage of Statute and Taking of Land.*

Where land is taken, under St. 1896, c. 516, § 11, for the extension of a street as a part of a scheme of improvement which includes the construction of a union station for passengers on railroads entering the southerly part of Boston, the damages are to be assessed at the market value of the land at the time of the passage of the statute, and not at its market value when it is formally taken, nearly a year afterwards, when the price of land in the vicinity has increased by reason of the expected improvement.

PETITION to the Superior Court, for a jury to assess damages for the taking of the petitioners' land by the street commissioners of the city of Boston, under St. 1896, c. 516, § 11.*

---

* This statute, which is entitled "An Act to provide for a Union Station for passengers on railroads entering the southerly part of the city of Boston," and took effect on June 9, 1896, provides, in § 11, as follows: "In order to render the Union Station and passenger facilities herein provided to be constructed and maintained . . . accessible and convenient for public

The case was submitted to *Hardy*, J., upon an agreed statement of facts, in substance as follows.

On April 8, 1897, and prior thereto, the petitioners were the owners in fee simple, free from any restrictions or encumbrances, of a certain parcel of land and the buildings thereon, situated at or near the junction of Federal Street, Atlantic Avenue, and Summer Street, in Boston. Pursuant to a vote or order of the board of street commissioners of the city of Boston, passed April 8, 1897, widening and extending Summer Street from Purchase Street to the harbor commissioners' line, their estate, above described, was taken, and the same, together with other lands, was laid out as a part of Summer Street, under the authority of St. 1896, c. 516, § 11.

A widening of Summer Street on its northerly side to one hundred feet would have taken nearly all of the petitioners' estate, and if it was widened in a line with the extension of Summer Street on the easterly side of Atlantic Avenue, it would have taken the whole of the petitioners' estate, and it was widened on that line.

In consequence of the location of the terminal station and of the other improvements contemplated by St. 1896, c. 516, there had been a very large increase in the value of real estate in this vicinity between the time of the passage of the act and the time when the street was laid out by the street commissioners ; and if the estate of the petitioners could legally share in such increase the fair market value of the estate at the time of the taking was $147,000, and if it could not legally share in such increased value, its fair market value was $98,000. This large increase in value was occasioned by the belief of real estate investors that the location of the terminal station in this vicinity had changed the future use of real estate on Summer Street and Atlantic Avenue from a wholesale business to a retail business.

---

use, the following changes shall be made by the board of street commissioners of the city of Boston in its streets and public places. . . . Summer Street shall be extended at least one hundred feet in width from Purchase Street to the harbor commissioners' line. . . . Said board of street commissioners shall discontinue, widen, and lay out said streets in such manner as may be approved by the mayor, and said city shall construct said streets . . . as above specified."

If the petitioners' estate could not legally share in such increased value, the damages were to be assessed at $98,000, with interest to be added from the time of entry upon the land, May 15, 1897. If it could legally share in such increased value, the damages were to be assessed at $147,000, with interest from that date.

Upon the foregoing facts, the petitioners requested the judge to rule that they were entitled to recover $147,000, with interest from the date of entry upon the land. The judge declined so to rule, but ruled that the petitioners were entitled to recover only $98,000, with interest from the date of entry upon the land ; ordered judgment to be entered for the petitioners for that amount, namely, $107,751, interest being computed to January 12, 1899 ; and, at the request of the parties, reported the case for the determination of this court. If the ruling and finding were correct, the judgment was to be affirmed ; otherwise, judgment was to be entered in the sum of $147,000, with interest from May 15, 1897, to the date of the judgment.

*T. M. Babson*, for the respondent.

*J. E. Cotter & A. P. French*, for the petitioners.

KNOWLTON, J. The only question in this case is whether the damages for the taking of the petitioners' land are to be assessed at the value of it at the time of the passage of the act which required the taking as a part of a scheme of improvement which included the construction of the Union Station for passengers on railroads entering the southerly part of the city of Boston, or at its market value when it was formally taken, nearly a year afterwards, when the price of land in the vicinity had increased by reason of the expected improvement of which the taking of this land was a part. The answer to the question is found in the fact that the taking was an inseparable part of the improvement out of which the expected increase in value was to come, and on account of which there was a general increase in the market price of real estate in the vicinity. Section 11 of the statute referred to (St. 1896, c. 516) directed the street commissioners to extend Summer Street " at least one hundred feet in width from Purchase Street to the harbor commissioners' line." The contemplated improvement which increased the market price of land could not be

carried out under the statute without this extension, for which the petitioners' land was taken. By the Pub. Sts. c. 51, § 3, " the damages for land taken shall be fixed at the value thereof before" the taking. This section has been decided to be constitutional, and its meaning, as applied to cases where the market price of land is increased before the actual taking by reason of an expected improvement which involves the taking, has been considered in several cases. *Dorgan* v. *Boston*, 12 Allen, 223. *Benton* v. *Brookline*, 151 Mass. 250. *May* v. *Boston*, 158 Mass. 21. *Bowditch* v. *Boston*, 164 Mass. 107. *Teele* v. *Boston*, 165 Mass. 88.

The doctrine of these cases is stated by the counsel for the present petitioners in their brief in these words: " The owner of land taken for public use cannot recover therefor an enhanced value which it has acquired merely by reason of the taking, or as the result of the improvement which the taking of that particular land for the specific purpose for which it is taken contemplates; for from the very nature of things its appropriation is a condition precedent to the existence of the improvement, and it cannot share in the effect of the change to create which it must be used." The reason of this rule was considered in *May* v. *Boston*, *ubi supra.* The rule is applicable to the present case, for the statute under which the land was taken provided distinctly what should be done, and the improvements which caused the rise in the price of real estate could not be carried out without taking this land. The fact that the actual taking did not occur until nearly a year after the statute was passed and the particular improvement determined upon is immaterial, for the determination to make the improvement and to take this land was the foundation on which the increase in prices rested.

*Judgment on the order.*