Johnson, J.
The paramount and decisive question is: What is the proper rule for the valuation of the property appropriated? The plaintiff in error contends that the courts below entertained an erroneous view as to the law that must govern under the circumstances of this case. The errors complained of relate to the admission and rejection of testimony and to the charge of the trial court. They all disclose the difference in the contentions of the parties as to the proper rule to be followed in the ascertainment of the value of the property.
It is conceded that the tract in question is all included in the connecting parkway between Gordon Park and Wade Park, that it was so included at the *22 time of the original appropriation proceeding in 1894, and that there never has been any deviation therefrom. All the property needed for the parkway adjoining the Nichols tract was acquired by the city by negotiation. This left only the Nichols tract, to be acquired by condemnation.
In State, ex rel. Knisely, v. Jones, 66 Ohio St., 453, and State, ex rel. Sheets, Atty. Genl., v. Beacom, 66 Ohio St., 491, decided in June, 1902, this court declared invalid certain classifications of municipalities theretofore made by the legislature, because they were in conflict with the constitution.
The United States court of appeals, therefore, held in the proceeding before it that the statute creating the original park board was invalid, that the original appropriation proceeding was void, and that Miss Nichols was entitled to recover possession of the property, but included in its judgment a condition that the city should have opportunity to begin proper proceedings, to appropriate the premises.
Between the time of the original taking by the city in 1894 and the beginning of the last appropriation proceeding in 1919 the plaintiff in error and her predecessor in title voluntarily conveyed away all frontage of the entire tract theretofore held by them on East 105th street, excepting only the right of way for an alley twelve feet in width extending between East 105th street and the present easterly line of the Nichols land; not a straight alley, but one having an elbow in it. So that when the present proceeding was begun the only means of ingress or egress to and from the tract here involved was over the twelve-foot alley referred to, except over the park driveways constructed by the city in the park. *23 Between the time of the first appropriation proceeding and the present one, the city of Cleveland has had a very great growth, and the park, parkway and park drives, including the property in question, have been greatly improved and beautified. Out of this general condition has arisen the difference of opinion between the parties as to the rule to be adopted in determining the value of the property.
The city contends that the difference between the amount of the first verdict, in 1894, for $4,850, and the verdict in the present case in 1919, for $50,000, adequately measures the- increase in values in the meantime, and is that full compensation to which the owner is entitled under the constitution, while the plaintiff in error insists she is entitled to a much larger award.
It is the contention of the plaintiff in error that the trial court erred in ruling that in assessing the full compensation to Miss Nichols for her land under the constitution she was not entitled to any value which the land possessed by reason of its having two park driveways leading to and from it as a means of ingress and egress, and by reason of its being surrounded on the north, south and west by the park and boulevard system connecting Wade and Gordon parks.
The court held that the witnesses and the jury should eliminate from consideration all elements of value contributed to the land by reason of the fact that it was situated in and surrounded by the park and boulevard system in the manner described.
The plaintiff in error argues that the court erred in holding that these 4.22 acres were without any means of ingress or egress save only a narrow, *24 crooked and practically useless alley, when in fact one wide boulevard approached and crossed the land from the north to south and another ran along the entire east end thereof, thereby affording complete access to it, and it is contended that the court required the witnesses and jury to assume that all the surrounding and contiguous territory consisted of “just land.”
The defendant in error contends that the Nichols land being one of many parcels of land included in a scheme for a parkway, it necessarily follows that all of said parcels could not be acquired at the same moment of time; that the owner is entitled to the full value of the property taken at the time of the trial for any and all purposes for which it may be used, but is not entitled to the supposed value of that property for a purpose for which it never could be used or occupied.
It is conceded and the court charged that the Nichols property was entitled to the valuation incident to its adaptability for park purposes, or for any other purpose, and to the benefit, if any, accruing from the contemplation of the acquisition of all of the land for park purposes, and that the owner was entitled to the enhanced value of this land at the time of the trial, including all the added value incident to the growth of the city of Cleveland and the great rise in the value of the real estate in the vicinity of the land in question. But it is contended that the property here in question is not entitled to the value it would have, if it had the legal right to insist upon the maintenance of the boulevards on the park property, and it is pointed out that these boulevards are subject to be relocated at the discretion of the *25 city and park authorities at any time, and that no person can acquire any vested or property right in the location or continuance of such driveways.
Prior to the taking of the Nichols land in the first appropriation proceeding the city had adopted a comprehensive park plan or scheme, which it proceeded to carry out. In 1897 it had acquired 61 parcels of land to he included in the park scheme, which also included the Nichols tract. At that time Mi'. John D. Rockefeller made a substantial gift to the Cleveland park system. He conveyed 25 parcels of land to the city for park purposes, and by the deed imposed certain conditions upon the 25 parcels and the 61 other parcels which the city had already acquired and was using for park purposes, including the Nichols tract. One condition was “And shall not use the said premises or any part thereof for any other purpose whatsoever. ’ ’ Among the conditions was one that the city should expend in the improvement of the premises for park and park driveway purposes the sum of about $600,000, which was a duplicate of the purchase price paid by the donor for all the different tracts. The deed contained the further agreement that if the city should fail to carry out the conditions named in the grant the deed should become void and the title revert to the grantor or his heirs. This deed was accepted by the council of the city of Cleveland April 6, 1897.
Long prior to any of the proceedings, involved in this case the municipal corporations of Ohio were invested with authority to hold and improve parks and boulevards, and accept devises and gifts therefor. Therefore it will be seen that wholly independent of the validity of the statute creating the board of park *26 commissioners, which instituted the first appropriation case, the tract in question was included in one comprehensive park and parkway system, that the city was under obligations to acquire and hold the different tracts named and maintain them for park purposes, including the tract involved in the case we have before us; and that a failure to comply with the obligation would result in forfeiture and abandonment of the park scheme in that locality.
It is important in this case to keep in mind the clear distinction between a public highway and a public park. A property owner whose property abuts upon a legally established public street, or highway, has property rights therein of ingress and egress to and from the same, but a public park is established for health and pleasure purposes. The object of acquiring land for a public park is that it may be developed, ornamented and landscaped from time to time, as experience and the need of the public health and pleasure may require, that the flower beds, lawns, walks, driveways and general scheme of landscape treatment may be maintained or altered from time to time. A driveway in a park is a different thing from a public street or a public highway. The former may be moved or relocated at the will of the park authorities, and the land included in it may be devoted to playground, recreation or other park purposes. The absence of a vested legal right of access to and from a public street or highway, except over the twelve-foot right of way described, is a vital and controlling element in the circumstances which must be considered in determining the value of the land taken by the public in this case. It will thus be seen that we have not before us a sit- *27 nation in which a park system has been adopted, the necessary land acquired and the park laid out, ornamented and landscaped with driveways and boulevards, all without taking or contemplating the taking of the Nichols tract, with ample access to public streets and highways; but there is presented a situation in which a park system has been adopted, to which from its inception the Nichols tract was a necessary element, and in which a large number of different tracts of land have been donated and deeded to the city on the express condition that the Nichols tract and others should also be acquired by the city and incorporated into the park and parkways — not only this, but with the express provision that if the conditions were not complied with the tracts donated should revert to the donors., thereby compelling the abandonment of the park scheme in that location.
Section 19, Article I of the Constitution of Ohio, provides: “Private property shall ever be held inviolate, but subservient to the public welfare * * * where private property shall be taken for public use, a compensation therefor shall first be made in money * * * and such compensation shall be assessed by a jury, without deduction for benefits to any property of the owner. ’ ’
Section 5, Article SUE, provides: “No right of way shall be appropriated to the use of any corporation, until full compensation therefor be first made in money * * * irrespective of any benefit from any improvement proposed by such corporation.”
And the law is well settled that under these provisions of the constitution the property should be valued as of the date when the jury views the premises.
*28 The United States court having adjudged that the first proceeding in appropriation was invalid, and that it did not affect the title of Miss Nichols in the property, it must be held that she is entitled to the value of her property as of the date of the last hearing in 1919, and that she is entitled to have the property estimated as of that time for any and all purposes, for which it might be used, including its adaptability for park purposes; also including any increase in the value of the land between the time of the first appropriation proceeding and the second on¿.
As said in 2 Lewis on Eminent Domain (3 ed.), 1329: “Whatever the time fixed upon with reference to which the compensation shall be estimated, the owner is entitled to the actual value of the land at that time, even though it may have been enhanced by reason of the projected improvement for which it is taken. It is said this is not really making the condemning party pay for an enhancement caused by its own work, as such enhancement does not come from the mere projection of the work, but from the existence of circumstances which create a demand for the work, and render it probable that such a work will sooner or later be built. * * * But it may be doubted whether the rule should go any further. If the proposed improvement had depreciated the value of the property, it would be very unjust that the condemning party should get it at its depreciated value, and the correct rule would seem to be that the value should be estimated irrespective of any effect produced by the proposed work. It has been held improper to consider what the property would have been worth if it could have had the *29 benefit of the proposed improvement without being taken. ’ ’
In 1 Nichols on Eminent Domain (2 ed.), 675, it is said: “If it is known from the very first exactly where the improvement will be located if it is constructed at all, the property that will be required for its site will not participate in the rise or fall in values, for since such property is bound to be taken if the improvement is constructed, it can never by any possibility either suffer from or enjoy the effects of the maintenance or the public work in its neighborhood; and consequently it is well settled that in such case in valuing the land the effect of the proposed improvement upon the neighborhood must be ignored.”
In Smith v. Commonwealth, 210 Mass., 259, the rule is stated thus at page 263: “The compensation, to which an owner of land taken by eminent domain is entitled, is its fair value in the market for beneficial use. If it is in the neighborhood of, but not included within the limits of a public improvement, its value for use in connection therewith may be enhanced, but if it is to be taken for the improvement, it can have, in the nature of things, no increase of scope for valuable use in private ownership.”
In St. Louis Elec. Terminal Ry. Co. v. MacAdaras, 257 Mo., 448, there was a single scheme of passenger and freight depots, tracks, switches, etc., and property was acquired from time to time as needed. It is there declared, after a full discussion of authority: “It is held generally, in cases presenting the appropriate facts, that, where a person’s entire property is included in one general proceeding of condemnation for a particular purpose, it is not per *30 missible to consider that purpose, or the results thereof, in estimating the owner’s compensation. The reasons for this rule are apparent. To permit it would be to take into consideration the condemnation proceeding itself as a factor, which is not allowed.”
In Dorgan v. City of Boston, 94 Mass., 223, land was being condemned for widening a street and the above rule was applied. The court says, at page 231: “Certainly there is no principle of equity on which a party can rest a claim for damages for the loss of a benefit or profit which, from the very nature of the case, he never could have received or enjoyed.”
In United States v. Certain Lands m Town of Narragansett, 180 Fed. Rep., 260, the government was building a breakwater, which finally included plaintiff’s property, and he contended he should be allowed to show the increased value. The court answers this contention as follows,: “Where, from the inception of the public improvement, it is known with practical certainty that the land will be required for the public project, this in itself negatives any supposed advantages which might accrue to the land held in private ownership by reason of its, adjacency to the grounds of a public Capitol, park, or like improvement. If from the outset it is known that the lands must be taken for the public purpose, it is unsound to base their valuation upon any supposed advantages arising from their continuance in private hands as lands adjacent to public grounds.”
In United States v. Chandler-Dunbar Water Power Co., 229 U. S., 53, it is held:
*31 “One whose land is taken by the Government for a particular purpose is entitled to have the fact that the land is peculiarly available for such purpose considered in the appraisal. * * *
“The owner of a separate parcel is not entitled to additional value resulting as part of a comprehensive scheme of improvement, requiring the taking of his and other property. ’ ’
In Mowry v. City of Boston, 173 Mass., 425, it is declared that “The owner of land taken for public use cannot recover therefor an enhanced value which it has acquired merely by reason of the taking, or as the result of the improvement which the taking of that particular land for the specific purpose for which it is taken contemplates; for from the very nature of things, its appropriation is a condition precedent to the existence of the improvement, and it cannot share in the effect of the change to create which it must be used.”
In Shoemaker v. United States, 147 U. S., 282, it was held, at page 304: “They are not at liberty to place a value upon these lands upon the basis of what one might be willing to buy them on time for purely speculative purposes, nor can they consider the value given them by the establishing the park.”
These principles have also been declared in City of El Paso v. Coffin, 40 Tex. Civ. App., 54, 60; Northern Pac. & Puget Sound Shore Rd. Co. v. Coleman, 3 Wash., 228; San Diego Land & Town Co. v. Neale, 78 Cal., 63; United States v. First Natl. Bk., 250 Fed. Rep., 299; Boston Chamber of Commerce v. City of Boston, 217 U. S., 189, 194; Kerr v. South Park Commrs., 117 U. S., 379, 387; Bowditch v. City *32 of Boston, 164 Mass., 107, and Benton v. Inhabitants of Brookline 151 Mass., 250.
The plaintiff in error in support of her contention cites Giesy v. Cincinnati, Wilmington & Zanesville Rd. Co., 4 Ohio St., 308, where it was held:
“The provisions of Article 1, Section 19, and Article 13, Section 5, of the Constitution — the one requiring compensation to be made without deduction for benefits, when property is appropriated to a public use, and the other providing for compensation irrespective of benefits, where it is taken by a corporation for a right of way — are, in legal effect, identical.
“When taken under either section, its fair market value in cash, at the time it is taken, must be paid to the owner; and the jury, in assessing the amount, have no right to consider or make any use of the fact that it has been increased in value by the proposal or construction of the improvement. ’ ’
In that case a railroad corporation was condemning some lots for railroad purposes and the court held that the same rule should be applied in the assessing of compensation to be paid by a corporation for a right of way as would be paid by the public for a public way. That was the question in controversy in that case. The court says, at page 331: “We are clear in the opinion * * * That whether property is appropriated directly by the public, or through the intervention of a corporation, the owner is entitled to receive its fair market value at the time it is taken — as much as he might fairly expect to be able to sell it to others for, if it was not taken —and that this amount is not to be increased from the necessity of the public or the corporation to have *33 it, on the one hand; nor diminished from any necessity of the owner to dispose of it, on the other.”
Stafford v. City of Providence, 10 R. I., 567, is also cited by the plaintiff in error. In that case a public park had already been located, and other land was afterward taken into the park, as enlarged. The court says, at page 571: ‘ ‘ The remarks we have made may aid us in deciding the present case, the peculiarity of which is that a public improvement was determined on and a quantity of land taken, but no land belonging to the present complainants, and sometime afterwards the commissioners of the water works decided that it was necessary to take more land, viz., the land now in question. The question is, is the value to be estimated at the time of the location of the works, or at the time the land is condemned? Obviously the latter, otherwise this gross injustice would ensue, if the first location had increased the value of the land in the neighborhood, and the then owner sold for this increased value, and the land was subsequently condemned, the purchaser would lose the difference. Upon any principle of justice, the person whose land is taken, whether in whole or in part, should be no worse off than his neighbors whose land is not taken, otherwise he does not receive that just compensation the Constitution provides for.”
And at page 572:
“We must therefore conclude that in case of land taken subsequently to the erection of a railroad or improvement, from a person, none of whose land had been taken before, the rule must be the value at the time of taking, of whatever items it might be composed, the same which other persons would give for it in the market. ’ ’
*34 These and the other authorities cited concur in the proposition that if a public improvement is made and completed and the public authorities subsequently decide to make an addition to it, or extension of it, and appropriate land for such addition, the owner is entitled to the increased value which the original improvement gave to his land. So, in this case, if, by the original scheme, or park plan, only a portion of the Nichols land or none of it had been included, and the present proceeding was brought to secure the plaintiff in error’s land as an addition to the original scheme, she would be entitled to the added value which her land had acquired from the existence of the park in its neighborhood or around it. But as already shown, these entire 4.22 acres were a necessary part of the original park scheme. The. deeds of Mr. Rockefeller and other grantors were made on the express condition that this and the other tracts specified should be included in the park scheme. If it had not been, the condition of the Rockefeller and other deeds would have been violated and the land forfeited. In other words,,the entire park scheme, as prepared, would have had to be abandoned. That has been the situation with reference to these particular 4.22 acres from the inception of the scheme. There never has been a time'when this land could have received any value apart from the park plan, or from the establishment of the park, for it was an essential element in the park itself, and by the great weight of authority the rule stated by the trial court in this case for the determination of the value of the land taken was correct.
As already pointed out an important element in this particular case is that the land in question has *35 no legal right of access to the existing boulevards or park driveways or to any public highway or street. Its only legal right of access is by means of the twelve-foot alley connecting with 105th street. The driveways in the public park are not public streets or highways, with all accruing rights to abutting owners, but are subject at all times to alter ations and improvements as circumstances may require.
In Langley v. Mayor & Trustees of the Town of Gallipolis, 2 Ohio St., 107, a parcel of land was dedicated to the village of Gallipolis “for the public good and the interest of the inhabitants, the streets and ‘La Place’ shall remain free, and never be alienated or obstructed on the bank of the river by any kind of buildings.”
. A suit was brought by a property owner to enjoin the municipal authorities, from closing the public place for the purposes of improvement and ornament. It had never been enclosed and had been used for over fifty years as an open public common, and to some extent as a public highway. The court says, at page 112: “The fact that this ground was left open, and used as an unenclosed public common for many years, was not inconsistent with the terms of the dedication, and could not lay the foundation for any presumption against the right of the village to use the ground in any other manner deemed more advantageous or preferable within the terms of the dedication. No exclusive continued and uninterrupted adverse possession by any individual in any portion of this public common, by which any private right was acquired, could be set up. Neither can any presumption arise in favor of a dedication to *36 the mere purposes of a public highway from the fact of its being unenclosed for many years. ’ ’
And at page 110:
“But the use and beneficial purposes of a public square, or common, in a village or city, where no special limitation or use is prescribed * * * are entirely different from those of a public highway. Such a place, thus dedicated to the public, may be improved and ornamented for pleasure grounds and amusements for recreation and health.”
This case was cited with approval in L. & N. Rd. Co. v. City of Cincinnati, 76 Ohio St., 481, at page 500.
During the trial of the case now before us, after the court had indicated its view with reference to the rule of law which should govern the admission of testimony, the cross-examination of witnesses touching the measure of value, the plaintiff in error moved to. withdraw a juror and continue the case because her counsel had not prepared her case witli reference to such a posture. That motion was overruled and the trial court ordered the trial to proceed. This was a matter largely in the discretion of the court, and we think no error was committed. The record discloses that very early in the proceedings the position of the coart touching this question, which was in fact the only important question in the case, was fully stated and full opportunity given counsel for plaintiff in error to develop their case with reference to that situation in chief and in rebuttal. The rulings of the court with reference to the examination and cross-examination of witnesses were based upon the view which the court entertained concerning the controlling law question, which we think was the correct view.
*37 The exclusion of the plans and drawings of a proposed apartment house when offered in evidence by the plaintiff in error followed logically from the holdings which the court had already made in the ease.
The plaintiff in error also excepted to the charge of the court. As we have observed concerning the other assignments of error, the charge likewise proceeded upon the same legal premise and we think fully and fairly presented the case to the jury.
"We find no error in the record and the judgment below will be affirmed.

Judgment affirmed.

Marshall, C. J., Jones and Matthias, JJ., concur.