39685. HOUSING AUTHORITY OF THE CITY OF ATLANTA v. HARD et al.

DECIDED OCTOBER 17, 1962—
REHEARING DENIED NOVEMBER 8, 1962.

*King & Spalding, David H. Gambrell, Joseph R. White, Jr.,* for plaintiff in error.

*J. Corbett Peek, Jr., William M. Pate,* contra.

*Heyman, Abram, Young, Hicks & Maloof, John H. Hicks,* amici curiae.

Felton, Chief Judge. The first amended ground of the motion for a new trial excepts to the following charge of the court: "I charge you that the law of this State provides that if, at the time the market value of the property sought to be condemned was to be estimated, it was known or anticipated that certain improvements would be made in the locality where the property was situated, and this fact served to enhance the market value of the property, the owner would be entitled to the actual market value as affected by reason of the fact that it was known or anticipated that such improvements would thus be made. This is true though the projected improvements were to be made by the condemning authority. In this case, I charge you that if you find from the evidence in this case that certain improvements had been made or that it was anticipated that certain improvements would be made in the locality where the property of Mrs. Elizabeth Hard was situated and that these improvements or anticipated improvements would serve to increase the market value of Mrs. Hard's property, then in that event Mrs. Hard would be entitled to the actual market value as affected by reason of the fact that it was known or anticipated that such improvements would thus be made. This is true even though

the anticipated or projected improvements were to be made by the Housing Authority of the City of Atlanta." A witness for the condemnee testified that property in the area had been under threat of condemnation for highway and urban renewal purposes for a number of years and the market was stagnant as a result of that fact. Then followed these questions and answers: "Mr. Peek: Q. Let me ask you then, Mr. Maddox, in your opinion would the proposed overall development of the Butler Street Urban Renewal Area have any effect upon the market value of other property in the vicinity that was not condemned? A. Very definitely would. It would have increased the value by tearing out all of the very low grade property in behind and in the area down there (indicating), it would have increased the value of all the other properties surrounding there, too. Q. Had Mrs. Hard's property not been in the area that was condemned, in your opinion would this proposed development have had any effect on the market value of her property? A. It would have. It already had this effect, that the expressway had cut it off from what you might say the worst portion of this before the urban redevelopment came in, and though there was some small pieces of property still off it, low class colored housing in behind this, there was very little of it and it had established a perimeter line you might say for that type of development. And it had effected its value with the tearing out of all the rest of this property, and not knowing what was going in but knowing that it was to be cleaned up and taken up did effect and did increase the value of the entire area." Considering the question and the answer the most rational interpretation of this testimony is that the anticipation of the Urban Renewal Development improved property values outside of the area which was to be condemned and redeveloped, and that if condemnee's property had not been condemned, but merely joined the condemned area, her property would also have increased in value.

We think the charge was error. The excerpt excepted to was lifted from the case of *Gate City Terminal Co. v. Thrower*, 136 Ga. 456 (71 SE 903). The *Thrower* case is readily distinguishable from the instant case by the fact that in the *Thrower* case there was no particular and identifiable tract of land which it

was contemplated would be condemned. It was anticipated that a railroad right of way and a terminal would be located in a general area. It is quite easy to understand how all of the land in such a general area could rise in value. Persons buying in the area in anticipation of the event might buy some of the land later to be condemned. In such a case the anticipation might increase the value of all of the land in the area including the particular land later to be condemned. It would be highly unfair in such a case to penalize the one who happened to own or buy all or part of the area to be condemned. Any factor affecting a rise in price is relevant in fixing market value at the time of the anticipation of an improvement under the conditions stated. That is a far cry from saying that if the anticipated improvement related to a certain, definite and prescribed area, the owner or purchaser could contend that such an area rose in value because of the contemplated improvement because there could be no incentive for investment or legal speculation based on the expectation that the area to be condemned could have any value except that which it had at the time it was announced that only definite areas would be condemned. In such a case no matter what improvements the condemnor contemplated putting on the land, or later put, they could not cause a rise in the value of the area. In this case the anticipation involved the condemnee's land and others. Only the elements involved before the announced proposal to condemn could be used in determining value. Some others were in this case, highways and other areas of urban development. The only evidence in this case is what the property would be worth if it had *not* been condemned. The *Thrower* case holds that not to be relevant as to the property taken. "It has been held improper to consider what the property would have been worth if it could have had the benefit of the proposed improvement without being taken." 2 Lewis on Eminent Domain, § 745. "Definite Location. . . The enhancement of price due to the public improvement, if based on the reasonable expectation that the lands may be held by the private owner with the added advantage of adjacency to the land improved by the public is legitimate; but when this expectation is destroyed by the practical certainty as distinguished from the legal cer-

tainty that the lands are not to continue in private ownership adjacent to the public lands, then the reason for allowing such enhancement fails. The rule has been stated to be that the owner of land taken by eminent domain is not entitled to recover any increase in the value of such land where the fact is that the land was known to be within the area designated for condemnation and was certain to be taken." Nichols on Eminent Domain, Vol. 4, pp. 208, 209, § 12.3151[1].

"The owner of land taken for public use cannot recover therefor an enhanced value which it had acquired merely by reason of the taking, or as a result of the improvement which the taking of that particular land for the specific purposes for which it is taken contemplates; for, from the very nature of things its appropriation is a condition precedent to the existence of the improvement, and it cannot share in the effect of the change to create which it must be used." Mowry v. City of Boston, 173 Mass. 425 (53 NE 885). In U. S. v. Miller, 317 U.S. 369, 376 (63 SC 276, 87 LE 336) the Supreme Court of the United States, through Mr. Justice Roberts, said: "If a distinct tract is condemned in whole or in part, other lands in the neighborhood may increase in market value due to the proximity of the public improvement erected on the land taken. Should the government, at a later date, determine to take these other lands, it must pay their market value as enhanced by this factor of proximity. If, however, the public project from the beginning included the taking of certain tracts but only one of them is taken in the first instance, the owner of the other tracts should not be allowed an increased value for his lands which are ultimately to be taken any more than the owner of the tract first condemned is entitled to be allowed an increased market value because adjacent land not immediately taken increased in value due to the projective improvement." It is insisted by the defendant in error that *Housing Authority of the City of Marietta v. York*, 106 Ga. App. 41 (126 SE2d 246) is controlling. We think that that case is distinguishable from the instant case in that in that case evidence was introduced without objection that the anticipation of improvements after condemnation of a definitely specified area could be considered as increasing market value whereas in this

case there is no such evidence. Since this case can be decided without overruling the *York* case it is unnecessary to present this case to the court as a whole for the consideration of the overruling of the *York* case. It is not necessary to consider the remaining special ground of the motion for a new trial.

The court erred in overruling the motion for a new trial.

*Judgment reversed. Bell and Hall, JJ., concur.*