CHARLES P. BOWDITCH & another, executors, *vs.* CITY
OF BOSTON.

Suffolk.    March 14, 1895. — June 21, 1895.

Present: FIELD, C. J., ALLEN, MORTON, LATHROP, & BARKER, JJ.

*Land taken for Public Improvement — Damages — Evidence — Instructions.*

On the assessment of damages for the taking of land by a city under a statute for
a public park, the petitioner has no ground of exception to the admission of evi-
dence of the sale of a neighboring estate two and a half years before the taking
in question, if it cannot be said that the estate was so unlike the petitioner's
estate that the price paid for it would furnish no criterion as to the value of the
latter, and that the ruling admitting it was clearly wrong, as it must appear to
have been to justify the court in holding that the discretion of the presiding
justice was improperly exercised; and if it does not appear that the introduc-
tion of electric cars in the neighborhood about a year and a half after the sale
had affected prices so much, or that the general rise in values had been so great,
as to render the sale misleading as a standard of comparison.

On the assessment of damages for the taking of land by a city in December, 1892,
under a statute for a public park, the petitioner has no ground of exception to
an instruction to the jury that, if the scheme of public improvement existing in
April, 1892, when all the land in the neighborhood except the petitioner's estate
and two adjoining estates had been taken, did not contemplate the taking of the
petitioner's land, he would be entitled to recover damages for the enhanced
value resulting from such scheme, but that if it did he would not; and it is
competent for the jury to find that the scheme contemplated the taking of the
petitioner's land from facts presented and from inferences to be drawn there-
from, although there is no direct evidence to the point.

PETITION for a jury to assess the damages for the taking, in
December, 1892, of land of the petitioners' testator, under St.
1875, c. 185, by the Board of Park Commissioners of the city of
Boston, for the purposes of a public park.

At the trial in the Superior Court, before *Richardson*, J., it
appeared that the premises, containing 152,384 square feet,
were, at the time of taking, the homestead estate of the late
Francis Parkman, and included two dwelling-houses, a stable,
and a greenhouse; that in 1891 the city of Boston had bought
the Rindge estate, adjoining the petitioners' land on the north,
and the Frothingham estate, so called, for park purposes; and
that in April, 1892, it had taken for park purposes all of the
estates surrounding Jamaica Pond except the land of the peti-

tioners and the two estates immediately adjoining on the south, on one of which, as appeared from the map and plans used at the trial, was a large ice-house, or, perhaps more correctly, a block of ice-houses. It further appeared that electric cars, running from the city proper, were introduced into Jamaica Plain in October, 1891.

The defendant offered in evidence the sale by a witness, Francis B. Beaumont, of the estate known as the Duff estate, on Burroughs Street, Jamaica Plain, made in May, 1890, which estate consisted of about 60,000 feet of land, with a large house, stable, grapery, and outbuildings. The witness testified that the estate did not border on Jamaica Pond, but was five hundred feet from it; that there was a view of the pond from the estate, and that the same was a perfectly level piece of land. No other evidence was offered relating to the estate at the time, but the atlas of West Roxbury and a large plan showing the two estates and their relation to each other were already in evidence. The defendant then asked the witness to state the price for which said estate was sold, to which the petitioners objected, on the ground that the estate was not shown to be similar or similarly situated, and that the sale was remote in time, and was made before the introduction of electric cars and the taking of the other estates about Jamaica Pond; but the judge admitted the evidence, and the petitioners excepted. No sales of similarly situated estates had been offered in evidence by the petitioners, and it appeared from the statements of experts that there had been for many years no sales of land, other than those to the city, nearer than Pond Street, and no sale of a large estate with a house and stable on it in that part of Jamaica Plain more recent than that of the Duff estate, and the judge said that he admitted the sale for that reason.

At the request of the defendant, and against the petitioners' objection, the judge instructed the jury as follows:

"Something has been said to you as to the application of the rule which the Supreme Court have laid down in these cases, as to how far a jury should consider improvements which the city had already made, and I propose to give you this instruction on that point. If the taking of other lands on the pond and in that vicinity in April, 1892, for a public park, included all the

land which the defendant proposed taking, or contemplated improving, then the jury will give a value enhanced, if it was enhanced, by the taking in April, 1892. If, however, the proposed improvement existing on or prior to April, 1892, then included this land of the petitioner, and was part of the plan and scheme then existing, I think you cannot give the petitioner the value enhanced by the taking of April, 1892."

Thereupon the judge read from *May* v. *Boston,* 158 Mass. 21, 29, 30, and then said:

"In other words, it seems to me that means this: that if the scheme of public improvement was thought to be completed, so far as the taking of land was concerned, in April, 1892, and the plan then and theretofore existing included only the lands colored on that plan [referring to a plan in evidence], then you would have a right to take into account the value of the land of the petitioners' testator enhanced by the taking of the other lands, if it was enhanced, I mean; and they would have a right to recover for the enhanced value. If, however, the plan and scheme then existing, and before that existing, involved the land of the petitioners' testator as well as that which was taken, then, under the rules and principles laid down by the Supreme Court, it does not seem to me that they would be entitled to the enhancement of the value to their land, if it was enhanced, by the taking in April, 1892. It is a question of fact.

"It is claimed by the petitioners that there was no evidence at all that the original plan did include the taking of these three lots of land. While it is not for me to say whether there was or not, I have only stated this general rule, and if it is applicable to the case you should adopt it and use it."

After this instruction had been given, to which the petitioners duly excepted, claiming that the only rule of damages applicable to the case was the fair market value of the land at the time of the taking, the petitioners requested the judge to instruct the jury that no evidence had been submitted as to whether the scheme of public improvement, as adopted by the park commissioners in April, 1892, included the taking of the land of the petitioners' testator, or contemplated the taking of the same; but the judge declined to give this instruction, and the petitioners excepted.

No direct evidence had in fact been offered by either party as to the action of the park commissioners in reference to the plan of park improvement, either as contemplated or determined upon, except that the actual purchases and takings by the city prior to December, 1892, had been put in evidence, as heretofore stated. But one of the real estate experts who testified for the respondents gave as among the reasons for his opinion that the land of the petitioners had not increased in value by reason of the takings of April, 1892, that every one knew that the park plans contemplated taking the estate of the petitioners' testator, and all the remaining lands on Jamaica Pond, and that no purchaser would pay an increased price for it, as he would know that his land would be taken before any work was done to improve the park lands taken in April, 1892; and counsel for the city so argued to the jury. Many of the experts who testified for the petitioners had given, among other reasons for the value they placed upon the estate, the fact that the estate was bounded on one side by a park, and was increased in value thereby.

Except as above, no reference had been made to the plans, purposes, or intentions of the park commissioners, only so far as they had been declared by their purchases and taking by eminent domain of lands on or near Jamaica Pond.

The jury returned a verdict for the petitioners in the sum of $47,500; and the petitioners alleged exceptions.

*R. M. Morse,* (*J. Duff* with him,) for the petitioners.

*T. M. Babson,* for the respondent.

MORTON, J. We cannot say that the Duff estate was so unlike the estate of the petitioners' testator that the price paid for it would furnish no criterion as to the value of the latter, and that the ruling admitting it was clearly wrong, as it must appear to have been in order to justify us in holding that the discretion of the presiding judge was improperly exercised. *Paine* v. *Boston,* 4 Allen, 168. *Shattuck* v. *Stoneham Branch Railroad,* 6 Allen, 115. *Patch* v. *Boston,* 146 Mass. 52.

It does not appear that the introduction of electric cars had affected prices so much, or that the general rise in values had been so great, as to render it misleading as a standard of comparison. The fact that the sale was two and a half years before

the taking in question did not of itself render it incompetent. *Benham* v. *Dunbar*, 103 Mass. 365.

The remaining question relates to the instruction given by the court, that, if the scheme of public improvement existing in April, 1892, did not contemplate the taking of the land of the petitioners' testator, they would be entitled to recover damages for the enhanced value resulting from such scheme, but that, if it did, they would not; and to the refusal of the court to rule that there was no evidence that the scheme adopted in April, 1892, included or contemplated the taking of the land of the petitioners' testator. The petitioners do not controvert the correctness of the general rule of law as stated by the court, and it must be regarded as established in this State. *Dorgan* v. *Boston*, 12 Allen, 223.   *Benton* v. *Brookline*, 151 Mass. 250. *May* v. *Boston*, 158 Mass. 21.   They contend that there was no evidence to warrant its application to the case before the court, and that its only effect was to mislead the jury.   *Brightman* v. *Eddy*, 97 Mass. 478.

It appeared in evidence from the plans, that in 1891 the defendant had acquired for park purposes the estate adjoining that of the petitioners' testator on the north, and also an estate known as the Frothingham estate, and that in April, 1892, it had taken for park purposes all of the estates surrounding Jamaica Pond except the land of the petitioners' testator and the two estates immediately adjoining it on the south.   It also appeared from the map and plans used at the trial, that there was on one of the estates not taken a large ice-house, or, perhaps more correctly, a block of ice-houses.   One of the defendant's experts, in giving reasons for his opinion that there had been no increase in value by reason of the taking in April, 1892, said that every one knew that the park plans contemplated taking the estate of the petitioners' testator, and all remaining lands on Jamaica Pond, and that no purchaser would pay an increased price, as he would know that his land would be taken before any work was done to improve the park lands taken in April, 1892. It also appeared that the land of the petitioners' testator, and we infer the remaining estates, were taken in December, 1892, only some seven or eight months after the taking in April of the same year.   We think that upon this evidence it was com-

petent for the jury to find that the scheme or plan, as it existed in April, 1892, contemplated as a part of it the taking of the land of the petitioners' testator, and of the remaining estates around the pond, and that the instructions that were given were therefore pertinent. It was open to argument, in the absence of evidence to the contrary, that the park commissioners could hardly have entered upon a scheme for the purpose of improving and beautifying the lands around Jamaica Pond as part of a system of public parks, and at the same time have contemplated leaving in the foreground, from different points of view around the pond, an unsightly block of ice-houses, and that it was more reasonable to infer, from the fact that they had acquired so much land around the pond in April, and that this was taken within so few months after, that the taking of it formed a part of the scheme as it then existed.

We think that the exceptions should be overruled, and it is so ordered.                                    *Exceptions overruled.*