## CLARENCE M. SMITH *vs.* COMMONWEALTH.

Berkshire.　September 12, 1911. — November 29, 1911.

Present: RUGG, C. J., MORTON, HAMMOND, BRALEY, SHELDON, & DeCOURCY, JJ.

*Damages,* For property taken under statutory authority.　*Greylock State Reservation.*　*Practice, Civil,* Exceptions.

At the trial of a petition to recover compensation for a large tract of land, chiefly covered with wood, on Greylock mountain taken under St. 1898, c. 543, for the Greylock State Reservation, the principal elements of value in controversy were the quality and quantity of the standing wood and timber and the ease and expense of marketing it as lumber. It appeared that a stream ran through the land called Hopper Brook. A civil engineer, not shown to be an expert on land values, who was called as a witness by the respondent, testified on cross-examination that the water from this brook could be conveyed to Williamstown and stated the area and watershed of the brook and that a part of it was precipitous with a quick flowage. There was no other evidence tending to show that the market value of the petitioner's land was affected by the presence of the brook. The presiding judge ordered that this evidence be stricken out for the reason that a full inquiry into the adaptability of the brook for a water supply would involve matters of which there could be no satisfactory proof and would be in substance only conjecture. *Held,* that the ruling, although rather broad in its terms, must be interpreted with reference to the evidence to which it was directed and the stage of the trial at which it was made, and that so interpreted it was a proper exercise of judicial discretion within the principles established by *Sargent* v. *Merrimac,* 196 Mass. 171.

At the trial of a petition to recover compensation for a large tract of land, chiefly covered with wood, on Greylock mountain taken under St. 1898, c. 543, for the Greylock State Reservation, the principal elements of value in controversy were the quality and quantity of the standing wood and timber and the ease and expense of marketing it as lumber. It appeared that a stream ran through the land called Hopper Brook. In regard to considering the brook as an element of value the presiding judge instructed the jury that its availability as a source of water supply "should be entirely disregarded" and that the brook "is a feature which you have a right to consider if you think it throws some light upon the question of value, on the theory that if there was not a brook there the soil would not be as fertile as it is. You have a right to consider that as one of the features but you have a right to consider it to no other extent, not for any possible use to which the brook might be put." There was nothing in the record tending to show that any purchaser would be likely to give an additional price for the land because of the possibility that the brook might be available for a water supply and there was no offer to show that any enhancement of market value arose from this cause. There was nothing to indicate that the town of Williamstown, by which it was contended that the water could be used, did not own already a source of water supply ample for future needs. *Held,* that, although the instructions given were

not accurate statements of law, it did not appear that they were of such a character as to afford reasonable apprehension that the petitioner had suffered harm and thus to require this court to sustain an exception to them.

On a petition to recover compensation for land taken under a statute for a public reservation, the petitioner is not entitled to recover any increase in the value of his land which was due to the fact that the land was known to be within the area designated for the reservation and was certain to be taken for it.

RUGG, C. J. This is a petition * to recover compensation for a large tract of land on Greylock mountain chiefly covered with wood taken under St. 1898, c. 543, for the Greylock State Reservation, a mountain park in the county of Berkshire. Flowing through the land was a stream called Hopper Brook.

1. Apparently the principal element of value in controversy at the trial related to the quality and quantity of standing wood and timber, and the ease and expense of marketing it as lumber. No evidence was shown to have been offered by the petitioner as a part of his case touching the use of Hopper Brook as a water supply, but a civil engineer called by the respondent as a witness (who did not qualify as an expert on land values) testified on cross-examination that the water could be conveyed by gravity to Williamstown, and stated the area of the watershed of the brook, and that part of it was precipitous with a quick flowage. But he gave no definite evidence as to the yield or quality of the brook for a water supply or the suitableness of any land for a reservoir, nor was anything said about the present or prospective need of any town for such a water supply as this source afforded, or the other elements essential to an intelligent consideration whether the market value of the petitioner's land was affected by the presence of the brook. The presiding judge directed that this evidence be stricken out, for the reason that a full inquiry into the adaptability of the brook for a water supply would involve matters of which there could be no satisfactory proof, and would be in substance only conjecture. This ruling was well within the principles discussed at length and established in the recent case of *Sargent* v. *Merrimac*, 196 Mass. 171, which need not be repeated. See also *Maynard* v. *Northampton*, 157 Mass. 218; *Lakeside Manuf. Co.* v. *Worcester*, 186 Mass. 552. This is in

* The petition was filed on February 23, 1909. The case was tried before *Lawton*, J. The jury assessed damages in the sum of $4,024.13; and the petitioner alleged exceptions.

accord also with the decision in *Fales* v. *Easthampton*, 162 Mass. 422, 426. The reception of evidence of this sort is largely within the discretion of the trial judge, which will not be revised unless plainly wrong. The ruling, although rather broad in terms, must be read in the light of the evidence to which it was directed and the stage of the trial at which it was made. So considered, it does not appear that the judicial discretion was unwisely exercised or that there was error respecting it in any other regard.

2. Touching the brook as an element of value in the real estate, the jury were instructed that its availability as a source of water supply " should be entirely disregarded " and that the brook " is a feature which you have a right to consider if you think it throws some light upon the question of value, on the theory that if there was not a brook there the soil would not be as fertile as it is. You have a right to consider that as one of the features but you have a right to consider it to no other extent, not for any possible use to which the brook might be put." Considered abstractly, it is plain that this does not state the law. One whose land is taken by eminent domain is entitled to be compensated in money for the fair value in the market of that of which he has been deprived. In ascertaining what that value is, all the uses to which the property is reasonably adapted may be considered. If it is so exceptionally fitted for a municipal water supply and the necessity for such use is so imminent as to add something to its present value in the minds of buyers, that element may be considered. But witnesses and jurors should not be permitted to enter the realm of speculation and swell damages beyond a present cash value under fair conditions of sale by fantastic visions as to future exigencies of growing communities. It is only in those rare instances, when property is of such a nature or so situated or improved that its real value for actual use cannot be ascertained by reference to market value, that the standard of special value may be resorted to. These principles have been stated many times, and are not now open to discussion. *Lawrence* v. *Boston*, 119 Mass. 126. *Moulton* v. *Newburyport Water Co.* 137 Mass. 163. *Sargent* v. *Merrimac*, 196 Mass. 171. *Beale* v. *Boston*, 166 Mass. 53. *Boom Co.* v. *Patterson*, 98 U. S. 403. *In re Gough & Aspatria, Silloth & District Joint Water Board*, [1904] 1 K. B. 417. *In re Lucas & Chesterfield Gas & Water Board*, [1909] 1 K. B. 16.

But, although the instructions given were not in accordance with what has been said, it does not follow that the exceptions must be sustained. The petitioner must show that the instructions were not adapted to the evidence or were of such character as to afford reasonable apprehension that he has suffered harm. As applied concretely to this case, it does not appear that any harmful error has been committed. The record is bare of any intimation that any purchaser would be likely to give an additional price because of the possibility that the brook might be available for a water supply. There was no offer to show that any enhancement of market value arose from this cause. There is nothing to indicate that Williamstown did not already own a source of water supply ample for future needs, and the petitioner had closed his case without making any assertion of this kind. Although the jury took a view, this aspect of value, which must include necessity for use in the reasonably near future, is not one which would be commonly obvious on such an inspection, and it does not appear to have been in this instance. Therefore, this seems to be a case where the judge was justified in ruling that the jury should not consider this element of value because there was nothing upon which to base any judgment as to its effect upon the market price of the land. This was the import of the portion of the charge to which exception was taken. The distinction between this ground of decision and that touching the testimony of the civil engineer heretofore discussed is clear. Considerations affecting market value in the minds of those familiar with such values are different from technical testimony of scientific facts or opinions which may have so remote a connection with value as to be admitted or excluded within the discretion of the trial court. An attempt has been made to sustain the exception on the ground that the brook was useful for power purposes, and hence gave an increment of value to the land. But there is nothing in the record which indicates that there was any evidence of this or that the view disclosed any opportunity for its practical use. Hence in the opinion of a majority of the court no error is shown. In other respects the charge was full and fair, and the petitioner's right to compensation was amply protected.

3. The instruction, to the effect that the value of the land was

not to be enhanced by reason of the fact that it was known to be within the area designed for the reservation and was certain to be taken for it, was correct. The compensation, to which an owner of land taken by eminent domain is entitled, is its fair value in the market for beneficial use. If it is in the neighborhood of, but not included within the limits of a public improvement, its value for use in connection therewith may be enhanced, but if it is to be taken for the improvement, it can have, in the nature of things, no increase of scope for valuable use in private ownership. The certainty of a right to a petition for damages for its appropriation by eminent domain is not a valuable use of land. *May* v. *Boston,* 158 Mass. 21. *Benton* v. *Brookline,* 151 Mass. 250. Moreover, there does not appear to have been any evidence to which the ruling was applicable, and hence the petitioner can have suffered no harm.

*Exceptions overruled.*

The case was submitted on briefs at the sitting of the court in September, 1911, and afterwards was submitted on briefs to all the justices except *Loring,* J.

*J. F. Noxon & M. Eisner,* for the petitioner.

*J. M. Swift,* Attorney General, *& A. Marshall,* Assistant Attorney General, for the Commonwealth.