E. FRANCES COLE & another *vs.* BOSTON EDISON COMPANY & another.

Middlesex.  December 3, 1958. — March 9, 1959.

Present: WILKINS, C.J., RONAN, WILLIAMS, COUNIHAN, & WHITTEMORE, JJ.

*Damages,* Eminent Domain. *Eminent Domain,* Damages. *Massachusetts Turnpike Authority. Public Works. Evidence,* Relevancy and materiality, Of value. *Practice, Civil,* Stipulation.

If, in view of the facts that a taking by the Massachusetts Turnpike Authority for its turnpike of the location of a main transmission line of an electric company made it virtually certain that the line would be relocated in the immediate vicinity, that the suitability of a certain nearby parcel of land as a site for the relocated line had been considered and a plan showing its location on that parcel prepared before such taking, and that after the taking the Authority and the electric company made a settlement agreement contemplating the acquisition by the company of an easement for its line "approximately as shown on the plan," it was likely that such an easement in the parcel would be taken as an incident of the turnpike project, and the easement in substantially the location shown on the plan was actually taken by the company about seven months after the original taking by the Authority, any enhancement in the value of the parcel due to the turnpike must be excluded from its value just prior to the taking by the company for the purpose of assessing damages for the company's taking. [665–668]

In a proceeding for assessment of damages for a taking of an easement in land for the purpose of relocating an electric line whose original location had been taken by a previous taking made for a turnpike near such land, certain evidence to show that the taking of the easement as an incident of the turnpike project was likely by reason of the earlier taking was relevant and should have been admitted. [667]

Under a stipulation by the parties to a proceeding that if the "theory of damages" applied by the judge as a matter of law by his instructions to the jury "should be determined to be wrong" a certain "alternative figure . . . should constitute the damages," judgment for the "alternative figure" must be entered where there was virtually uncontradicted evidence of a certain fact on which, if found, the judge's instructions would be erroneous, even if there was sufficient evidence negativing that fact to present an issue for the jury: the stipulation did not include the possibility of there being such a jury issue. [668–669]

Under G. L. c. 79, § 12, where a portion of a parcel of land was taken for
   the purposes of a turnpike and some seven months later a taking was
   made of an easement in the rest of the parcel for the relocation of an
   electric line as an incident of the turnpike, any benefit accruing to the
   remaining land by reason of the turnpike would be an offset to the
   damages for both takings. [669]

In a proceeding for assessment of damages for a taking of an easement in
   a parcel of land as an incident of a nearby turnpike, which was made
   several months after the original taking for the turnpike and was
   likely to be made by reason of the original taking, evidence of a sale
   price of other land reflecting a substantial enhancement of value be-
   cause of the turnpike was inadmissible on the issue of the value of the
   parcel in question properly determined as of a time just before the
   original taking. [669]

PETITION for assessment of damages filed in the Superior
Court on January 9, 1956.

The case was tried before *Donahue,* J.

*Frank B. Frederick,* for Boston Edison Company.

*Francis V. Matera,* for Massachusetts Turnpike Au-
thority.

*Morris Shapiro,* for the petitioners.

WHITTEMORE, J.   This is a petition for the assessment of
damages, under G. L. c. 79, for the taking by the respondent
Boston Edison Company (Edison) of an easement for pur-
poses of transmission of electricity.   The chief issue pre-
sented by the respondents' exceptions is whether the prior
value of the petitioners' land for purposes of determining
the damages is its value just prior to the taking of the ease-
ment on December 27, 1955, or its value prior to the taking
by the Massachusetts Turnpike Authority (the Authority)
on May 12, 1955, by "Order of Taking No. 44" of the fee in
nearby land, including adjacent land of the petitioners.
Taking order No. 44 took also Edison's then existing ease-
ment which was relocated by the December 27 taking.   The
Authority was allowed to intervene as a respondent.

The trial judge instructed that the December, 1955, en-
hanced value controlled, but also instructed the jury to find,
as an alternative amount, the difference in value before and
after the taking entirely disregarding the turnpike.   The
parties agreed that "if the theory of damages upon which

the case was submitted to the jury, which included any enhancement in value resulting from the construction of the toll road, should be determined to be wrong, the alternative figure brought in by the jury, which excludes any such enhancement in value, and disregards the toll road completely, plus four per cent interest from December 27, 1955, to and including October 19, 1956, should constitute the damages of the petitioners."

The respondents excepted to the instructions that the jury should use the enhanced value and to the refusal to instruct that on all the evidence the taking of the easement was a part of the turnpike improvement, that an increase in value from the public improvement cannot be included, and that the jury therefore in determining the fair market value of the petitioners' property just prior to the December, 1955, taking should deduct the amount by which the then value had been enhanced by the construction of the turnpike.

The evidence set out in the bill of exceptions and in the incorporated exhibits shows the relevant state of facts to be as follows: Prior to May 12, 1955, the petitioners were the owners of a tract of land in Framingham, which had a long frontage on Speen Street, near its intersection, southeasterly of the petitioners' land, with Route 30. The southeasterly part of this parcel was, beginning in 1955, zoned for light manufacturing and had an area of slightly over five and one half acres. The relevant evidence concerns only this part of the petitioners' land. The land taken from the petitioners on May 12, 1955, was the southeasterly interior corner of this parcel, with an area of a little less than half an acre. A large part of the land so taken underlies a part of the toll plaza of a turnpike interchange. The Authority made nominal awards totaling $2 for the land taken. The bill is silent as to whether the petitioners claimed or were paid a larger sum.

On August 25, 1955, the Authority and Edison entered into a written agreement which in its preambles recited that the Authority was constructing the toll highway under St. 1952, c. 354; that the location of Edison's existing and

proposed high tension line was in a section of the turnpike, and the location and construction of the turnpike "will make it necessary to alter the power line as now constructed and as to be constructed in said existing right of way and to relocate the same in a new right of way"; and that the parties had "reached an agreement as to the apportionment of the work, the expense of carrying out said relocation and alterations, and future maintenance." The agreement provided in part that Edison would take all steps necessary to acquire easements for a relocation of the power line "approximately as shown on the plan . . . dated April 22, 1955, annexed hereto"; that the easements would "be substantially the same as those now owned by Edison in the existing location of the power line"; that the entire cost of relocation would be borne by the Authority excluding cost of installing new lines, but that the Authority would not be liable to reimburse "damages recovered by or paid to a person over whose land easements have been taken . . . unless the amount . . . has been awarded in judicial proceedings or has been agreed to by the Authority." The agreement contained Edison's release to the Authority of claims for damages or loss for the taking of Edison's interests by the order of May 12, 1955.

Edison's taking from the petitioners on December 27, 1955, pursuant to this agreement, was an easement in substantially the location shown on the April 22, 1955, plan in a strip through the petitioners' remaining five or so acres zoned for light manufacturing, so located as to leave a part of the land inaccessible to a public way except through the easement and to cause substantial damage.

The head of the survey, layout and transmission, and property transaction division of Edison testified that within the area of the easement there is a 110,000 volt line, which is the heaviest load Edison uses, and a 13,800 volt line; that in the course of the taking made by Edison he went on the petitioners' property ten or fifteen times, the first time in 1954. In the spring of 1955 he was "on and off the land six or eight times." The respondents offered to show through

this witness, and through an engineer for the Authority, that the Authority "indicated . . . the line where the Boston Edison would have to be relocated; generally, that it would have to be on the side of the turnpike interchange where it now is"; that Edison submitted five different locations, three of which included the petitioners' property; and that the engineer for the Authority determined that the location "where the line now exists" should be the one taken.

Statute 1952, c. 354, § 7, provides in part, "Whenever the Authority shall determine that it is necessary that any . . . facilities which now are . . . located in, on, along, over or under the turnpike should be relocated in the turnpike, or should be removed from the turnpike, the public utility . . . owning or operating such facilities shall relocate or remove the same in accordance with the order of the Authority." The statute in § 4 (c) provides: "The term 'cost of the turnpike' shall embrace . . . the cost of demolishing or removing any buildings or structures on land . . . acquired, including the cost of acquiring any lands to which such buildings or structures may be moved . . . ." Section 8 authorizes turnpike revenue bonds "for the purpose of paying all or any part of the cost of the turnpike . . . ." Section 15 provides that "[a]ll private property damaged or destroyed in carrying out the powers granted by this act shall be restored or repaired and placed in its original condition as nearly as practicable, or adequate compensation made therefor, out of funds provided under the authority of this act."

1. The takings by the Authority and by Edison were both under G. L. c. 79. See St. 1952, c. 354, § 5; G. L. c. 164, § 72. Section 12 of c. 79 provides in part: "The damages for property taken under this chapter shall be fixed at the value thereof before the taking . . . ." This means "before the beginning of the entire public work which necessitates the taking." *Connor* v. *Metropolitan Dist. Water Supply Commn.* 314 Mass. 33, 39–40, and cases cited. Thus a person whose land is taken for public use cannot recover the

enhancement in value due to the improvement for which the land is taken. *Dorgan* v. *Boston,* 12 Allen, 223, 231. *Benton* v. *Brookline,* 151 Mass. 250, 257–258. *Bowditch* v. *Boston,* 164 Mass. 107, 111. *Smith* v. *Commonwealth,* 210 Mass. 259, 262–263. In *May* v. *Boston,* 158 Mass. 21, 31, we held that if the original scheme includes the possibility that a parcel will be taken and that parcel is in fact subsequently taken as part of the original scheme and not some other, the owners are not entitled to recover the enhancement resulting from "the general originally indefinite plan."

Decisions in some other jurisdictions lend support to a more guarded statement of the rule: that is that if it was *contemplated* at the time of the original construction that the land in question would sooner or later be taken for the purposes of the project, the enhanced value is not to be used in determining damages. See for these decisions and those holding that the enhanced value is the measure, annotation 147 A. L. R. 66, 85, 88, and Nichols, Eminent Domain (3d ed.) § 12.3151. The rule is stated in *United States* v. *Miller,* 317 U. S. 369, 379, in words which we think are a more precise and better expression of the concept underlying *May* v. *Boston, supra,* than the words used in the *May* decision: "If they [the subject lands] were within the area where they were likely to be taken for the project, but might not be, the owners were not entitled, if they were ultimately taken, to an increment of value calculated on the theory that if they had not been taken they would have been more valuable by reason of their proximity to the land taken." See *Bowditch* v. *Boston,* 164 Mass. 107, 111 ("plans contemplated taking the estate"); *United States* v. *Rayno,* 136 F. 2d 376, 379 (1st Cir.), cert. den. sub nom. *Rayno* v. *United States,* 320 U. S. 776. In *Smith* v. *Commonwealth,* 210 Mass. 259, 262–263, we found no error in the instruction that the value was not to be enhanced by reason of the fact that "it was known to be within the area . . . and was certain to be taken . . . .," saying, "The certainty of a right to a petition for damages for its appropriation by eminent domain is not a valuable use of land," citing *May* v. *Boston*

and *Benton* v. *Brookline, supra.* But nothing in the *Smith* case required a discussion of the breadth of the rule, or indeed any statement of it, as there did not even appear to be any evidence to which the request ruled on was applicable.

2. The ruling was wrong that the petitioners were entitled to have the jury determine damages on the basis that the value of the land before the taking was its enhanced value.

The likelihood of the relocation of the Edison line in the immediate neighborhood was inherent in taking order No. 44. The existing easement was taken by that order. It was almost certain that this segment of such an important transmission line would be located close by so as to permit the continued use of the whole of the line with the least possible change in its course. The location fixed on August 25, 1955, was then shown on the plan dated April 22, 1955.

The likelihood of the relocation of the easement in the petitioners' land is shown by the April 22, 1955, plan, and in the decision recorded in the August 25, 1955, agreement to locate it there, in the testimony of Edison's engineer, and in the offered testimony which should have been admitted.[1] The engineers' testimony, given and offered, showed that the suitability of the petitioners' land was recognized in 1954 and in the spring of 1955, and, with the plan and agreement, confirmed that all relevant factors were such that the chances were good that the petitioners' land would be used. The factors that led to the particular site, it may be fairly inferred, lay in the relevant characteristics of all the various possible locations as they existed on May 12, 1955.

We do not find important the fact, stressed by the petitioners, that the decision as to the place for relocation of the easement is evidenced by an agreement between the Authority and Edison rather than by an "order." See St. 1952, c. 354, § 7, *supra.* Taking order No. 44 made relocation necessary as it took away Edison's right to have its lines in the former location.

---

[1] Judgment under the stipulation, see *infra*, removes any reason for a new trial because of the exclusion of this evidence.

That the second taking was by Edison did not remove it from the scope of the original project. The decision that the turnpike be built in this location caused the relocation of Edison's lines. Through the impact of the project on Edison, the project damaged the petitioners. The statute properly provided that the damages involved be paid by the causing agency. In these circumstances it cannot be ruled that the Authority must pay more for interests in land which it caused Edison to take than would be required for such interests if it took them itself.

The petitioners contend that since under G. L. c. 79, § 12, the enhancement of value of their remaining land was to be deducted in determining the value of the land taken from them on May 12, they are entitled as a matter of law to recover for the later injury to that remaining land at its enhanced value. We think that this is a factual consideration only. Of course the petitioners may not, without compensation, be deprived of that part of the enhanced value of their remaining land which has, by offset, in effect paid them for land already taken. But this may be provided against in the evidence and by proper instructions. Semble *May* v. *Boston*, 158 Mass. 21, 27–28, 31. See point 4, *infra*.

3. The stipulation is applicable to require the entry of judgment under the alternative verdict. There was practically no evidence entitled to weight which negatived the evidence that the December, 1955, taking of the petitioners' land was made likely by the original project and by taking order No. 44. The seven months' interval, to which the judge referred in his charge, was insignificant in view of the taking of the Edison easement in May, the April 22, 1955, plan, the August, 1955, agreement, and the fact that in December the turnpike was in process of construction. In *May* v. *Boston*, *supra*, where the taking occurred over five years after the conveyance of another portion of the petitioners' land to the city for the Jamaica Pond park project, we held that there was no evidence that the taking "was on account of any other plan than the general originally indefinite plan . . . ." That the taking parties were different

legal entities in the circumstances did not speak of a new project. We need not determine if nevertheless there was an issue for the jury whether the taking of the petitioners' land was made likely by the coming of the turnpike. We think that in any event the allowance of a motion for judgment for the lesser sum, notwithstanding a jury finding that the December project was a new one, would have been appropriate. *Hartmann* v. *Boston Herald-Traveler Corp.* 323 Mass. 56, 59–60. *Kabatchnick* v. *Hanover-Elm Bldg. Corp.* 331 Mass. 366, 373. The reasonable construction of the stipulation in the circumstances excludes from consideration the possible third alternative that the issue might be one of fact.

4. Although the exceptions do not present the issue, we think it should be noted that the instructions for determining damages were incorrect as applied to a taking which was a part of the original project. Where there is one project which involves two takings, then, so nearly as may be, the petitioners' damages are to be determined as though the two takings were simultaneous. That is, under G. L. c. 79, § 12, the enhanced value of any remaining land due to the project is an offset to the petitioners' damages from both takings. The instruction given by the judge for determining the alternative figure of damages failed to require any offset for enhanced value in respect of the second taking.

5. The respondents took exception to the admission in evidence of three sales of other land. One of these sales was made in the early part of 1955 and two were in 1956. The judge later struck the evidence of one 1956 sale on the ground that the parcel sold was too far away and gave appropriate instructions to disregard it. We assume the jury did disregard it (*Whitney* v. *Bayley,* 4 Allen, 173, 175; *Commonwealth* v. *Rondoni,* 333 Mass. 384, 386). It was uncontroverted on the evidence that the two sale prices left in the case reflected an important enhancement of value because of the turnpike project, and these sales were clearly inadmissible as evidence of the pre-turnpike value. The respondents, however, by the stipulation agreed in effect that the case might stand as tried on the two alternative legal premises.

There was other evidence relevant to the pre-turnpike value and the respondents did not except to the judge's charge in respect of the use of that evidence in determining the alternative damage figure. We see no occasion therefore to examine nicely the issue of whether the sales were properly admitted as evidence of the value of the petitioners' land just prior to December 27, 1955. There were important differentiating factors which the respondents stress, including railroad access; an industrial water main, sewer connections, an established grouping of industrial plants, and nearness to Route 9. But there was evidence also from which it might be concluded that the coming of the turnpike was a very important factor in determining post-turnpike value of all industrially zoned land near to it. Certainly the evidence was not so unrelated to the issue on which it was offered and received that its admission, in the judge's discretion (see *Iris* v. *Hingham,* 303 Mass. 401, 408–409; *Amory* v. *Commonwealth,* 321 Mass. 240, 255–256; *Congregation of the Mission of St. Vincent de Paul* v. *Commonwealth,* 336 Mass. 357, 359), could be deemed to have prejudiced the determination of the alternative issue to which it was not relevant.

6. The respondents' exceptions are sustained. In accordance with the stipulation the verdict as recorded is set aside. Judgment is to enter on the alternative verdict in the amount of $23,170 plus interest at four per cent from December 27, 1955, to and including October 19, 1956.

*So ordered.*