BACHELDER TRUCK SALES, INC. *vs.* COMMONWEALTH.

Worcester.    January 7, 1966. — February 9, 1966.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & REARDON, JJ.

*Evidence,* Of value, Relevancy and materiality.  *Eminent Domain,* Damages, Right to damages.  *Damages,* Eminent domain.  *Error,* Whether error harmful.

The fact that a deed of a parcel of registered land delivered to the grantee had not been registered at the time of a taking by eminent domain of the parcel and an adjoining parcel of unregistered land owned of record by such grantee did not require that the damages for the taking be assessed for each parcel separately without regard to the likelihood of its use with the other parcel, or preclude consideration of evidence of the value of the parcels used as a unit for a certain purpose as the highest and best use of each.   [272]

On facts not showing that takings of land by eminent domain some two years apart were for the same project or that an increase in the value of land involved in the second taking was due to the first taking, there was no merit in a contention that the value of the land later taken should be determined as of the time of the first taking.   [273]

In a proceeding for assessment of damages for a taking by eminent domain, it was error to admit testimony by an expert for the petitioner stating a single depreciated reproduction cost figure for both oil tanks on the land taken and related equipment not on that land; but the error was harmless in view of testimony of a witness for the respondent permitting an ascertainment of such cost for the tanks alone.   [273–274]

PETITION filed in the Superior Court on January 4, 1962. The case was tried before *Meagher, J.*

*Sumner W. Elton,* Special Assistant Attorney General (*Russell F. Bath, Jr.,* Legal Assistant to the Attorney General, with him), for the respondent.

*Henry P. Grady* for the petitioner.

WHITTEMORE, J.   These are the Commonwealth's exceptions in a proceeding under G. L. c. 79, to recover damages for the taking by eminent domain of land in Gardner.   The petitioner had a verdict for $25,000.

The jury could have found these facts.   The land was taken on June 13, 1961, for the purpose of relocating

Route 2. There were two adjoining parcels identified as parcel 3–48, containing 13,720 square feet, and parcel 3–50 containing about 16,430 square feet. Five oil storage tanks stood on parcel 3–50. Appurtenant to these parcels, and also taken, was a right of way, thirty feet wide, to South Main Street.

The petitioner's title to the two parcels came from Foster M. Beach. The deed to parcel 3–48 was dated July 22, 1960, and recorded August 12, 1960, it being a deed of unregistered land. Beach executed and delivered a deed dated August 10, 1960, to parcel 3–50, which was registered land. This deed was never registered. The owner's duplicate certificate was delivered in 1960 to the attorney for the petitioner. An order of the Land Court on June 27, 1961, directed the issuance of a new duplicate certificate in place of a lost duplicate certificate. Beach executed and delivered another deed dated July 18, 1961, to the petitioner of parcel 3–50, and a certificate of title pursuant thereto was issued on July 21, 1961.

Parcel 3–50 had been in common ownership with another tract, identified as parcel 1–66, which fronted on Summer Street, and the two tracts had been in use for a bulk fuel storage plant. Parcel 1–66 had been taken by the Commonwealth in August or September, 1959, and at that time the Commonwealth had provided the thirty foot easement that gave to the back lot, not taken (parcel 3–50), access to South Main Street.

Parcel 3–50 alone was of insufficient size for the operation of an oil farm and of little value. With parcel 3–48, however, the premises could be used for such a plant. There would be an area in which trucks could be accommodated, although it was "a little bit on the tight side."

Notwithstanding the taking in 1959, parcel 1–66 remained available for private use at least until December, 1961, and until that time was used with parcel 3–50 for a fuel storage plant. The petitioner conducted the operations of the plant from and after its land purchases from Beach in the summer of 1960. Parcel 3–48 was not used with parcel

3–50 either prior to or after the taking of those parcels on June 13, 1961.

The notices, dated August 7, 1961, pursuant to the taking of June 13, 1961, stated the supposed owner of parcel 3–50 to be Foster M. Beach and of parcel 3–48 to be Bachelder Truck Sales, Inc. According to an indorsement on the notice in evidence in respect of parcel 3–50, a copy of that notice was sent to Bachelder Truck Sales, Inc.

There was testimony of the value of parcels 3–48 and 3–50 as a single piece usable for a bulk oil storage plant.

1. The chief exceptions are based on the contention that the evidence of the value of the two parcels as a unit in single ownership was improperly admitted. We disagree.

The statute relating to registered land, G. L. c. 185, § 57, provides that "the act of registration only" shall be the operative act to convey or affect the land" and that a deed shall operate "only as a contract between the parties." Having the deed, the petitioner was the equitable owner under a contract to purchase and was entitled to the full damages for the taking and to maintain the petition therefor. *Pinkerton* v. *Boston & Albany R.R.* 109 Mass. 527, 537–538. The Commonwealth does not dispute this, but suggests that, in effect, the petitioner, as to parcel 3–50, was only the assignee of Beach's right, so that the damages for the taking of that parcel must be determined separately and as though no other land had been taken. This suggestion, however, would not require that the value of each parcel be determined without regard to the likelihood of its use with the other parcel. The jury could find that the highest and best use of each lot was use with the other to constitute a part of an oil storage plant. Even if the parcels had not been in the same equitable ownership, the possibility of joint use, if it was sufficient to be reflected in the fair market price of each, would be an element of value. *Aselbekian* v. *Massachusetts Turnpike Authy.* 341 Mass. 398. Here there was no doubt that each lot was fully available for use with the other and no substantive purpose would have been served by requiring separate valuations of the two lots.

2.  The Commonwealth contends that the value of the lots taken should have been determined as of the date of the taking of parcel 1–66 on the ground that it is necessarily inferable that the takings in 1959 and in 1961 were part of the same project and that, as held in *Cole* v. *Boston Edison Co.* 338 Mass. 661, 665, the statutory provision (G. L. c. 79, § 12) that "damages . . . be fixed at the value . . . before the taking" means before the beginning of the entire public work that constitutes the taking.

The record does not show that such an inference was required.  On the contrary, a further taking in 1961 by the Commonwealth in the same general location as the 1959 taking suggests a new plan.  There is a further distinction. Unlike the *Cole* case the augmented value sought for parcel 3–50 did not result from the first taking.  A significant change after the 1959 taking was the coming together of legal title to parcel 3–50 and equitable title to an available adjoining parcel (3–48) so that experts had a firm basis for appraising each parcel at its full value as part of an operable oil storage plant.  The petitioner, as the new owner of the parcels constituting this plant, was entitled to its fair market value.  Nothing in the *Cole* case suggests the contrary.

3.  The Commonwealth excepted to the judge's refusal to strike the testimony of the petitioner's expert Orin W. Duff that the depreciated reproduction cost on June 13, 1961, of the tanks on parcel 3–50, and associated pipes and pumps was $26,286, it having appeared that the associated equipment was in great part either not on the land taken or of little or no value because of the discontinuance of a railway siding.

The motion, we think, should have been allowed.  Depreciated reproduction cost, at best, though admissible in the judge's discretion (*Levenson* v. *Boston Elev. Ry.* 191 Mass. 75, 78), has only a very inconclusive relation to fair market value. *Goodyear Park Co.* v. *Holyoke,* 298 Mass. 510, 511. *Ramacorti* v. *Boston Redevelopment Authy.* 341 Mass. 377, 382.  Here the gross figure inclusive of pipes and pumps was not applicable to the land taken.

There was, however, no reversible error.

A basis for ascertaining from Duff's gross figure the approximate depreciated replacement cost of the tanks alone was presented to the jury in the later testimony of a witness for the Commonwealth that the replacement cost of the tanks was $27,375, and of the "pipes, valves and pumps and so forth used in connection with the tanks" was $29,407.

We see no basis for concluding that the jury were misled. Furthermore, Duff's figure was included in the testimony of another witness not objected to on the ground specified as to Duff's testimony and not subjected to a motion to strike.

*Exceptions overruled.*