King, J.
Plaintiff Frontage Development Corporation (“Frontage”) brought this action pursuant to G.L.c. 79 for assessment of damages against defendant, City of Boston (“City”), acting by and through its Public Facilities Commission, for taking plaintiffs property by eminent domain for public purposes. Frontage now seeks to exclude evidence from trial pertaining to testimony and a special jury verdict in a prior case in which Frontage was a party. The City seeks to establish non-mutual defensive collateral estoppel on the; issue of the valuation of the parcel of land the City took from Frontage. For the reasons set forth below, Frontage’s motion is DENIED, and the City’s motion is also DENIED.
BACKGROUND
Frontage owned a parcel of property located at 200 Frontage Road, Boston, Massachusetts (“Frontage Property”). In 1986, the City leased the Frontage Property for a ten-year period to use as a storage lot for towed vehicles. On July 27, 1995, the Commonwealth of Massachusetts (“Commonwealth”), acting through the Massachusetts Highway Department, executed an Order of Taking and took a 41,130 square foot portion of the Frontage Property (“Commonwealth Taking”) for the construction of roadways in connection with the Central Arteiy/Third Harbor Tunnel Project (“CA/T Project”). On March 29, 1996 the City executed an Order of Taking, and took the remaining 317,582 square feet of the Frontage Property in conjunction with its continuing use as a storage lot for towed vehicles (“City Taking”).
Frontage tried its case against the Commonwealth before a jury in September 2000 in Frontage Development Corp. v. Commonwealth of Massachusetts, C.A. No. 98-0630 (“Commonwealth Action”). In that action, Frontage claimed that it was entitled to damages calculated using the difference between the value of its parcel before the Commonwealth Taking and the value of the parcel remaining after the taking. Frontage’s real estate expert, Martin Coleman (“Coleman”), testified that the highest and best use of the Frontage Property prior to the taking was as a retail property, and that the valuation of the parcel based on this use was $15,000,000. Coleman also testified that, based on the highest and best use of the remaining parcel as industrial warehouse space, the value of the remaining parcel after the Commonwealth Taking was $7,150,000.
In response to special verdict questions, the jury in the Commonwealth Action determined the fair market *122 value of the Frontage Property before the Commonwealth Taking to be $6,820,335, and the value of the parcel after the taking to be $6,023,000. Thus the court ordered the Commonwealth to pay $797,335 in damages to Frontage (the difference between the before-and after-taking values of the property). The City subsequently took the remaining parcel through eminent domain, and Frontage now seeks damages (“City Action”).
In the City Action, Frontage contends that the City Taking is worth $ 11,000,000 based on the highest and best use of the parcel as a “laydown area” and office space for contractors employed on the CA/T Project. Frontage seeks to exclude from evidence the prior testimony of its own expert in the Commonwealth Action, Coleman, who testified that the highest and best use for this parcel was as industrial warehouse space and that its value was $7,150,000. Frontage also seeks to exclude from evidence the special jury verdict from the Commonwealth Action that the fair market value of the parcel taken by the City was worth $6,023,000. The City, through non-mutual defensive collateral estoppel, seeks to bar Frontage from relitigating the property valuation issue because, it argues, that issue was conclusively determined in the Commonwealth Action.
DISCUSSION
A. Prior Testimony of Frontage’s Expert
General Law chapter 79, §12 (1993 ed.), dealing with eminent domain, provides:
The damages for property taken under this chapter shall be fixed at the value thereof before the recording of the order of taking, and in case only part of a parcel of land is taken there shall be included damages for all injury to the part not taken caused by the taking or by the public improvement for which the taking is made; and there shall be deducted the benefit accruing to the part not taken
When the government takes only a part of a parcel of land, the measure of damages is calculated by computing the difference between the fair market value of the whole parcel right before the time of the taking and the fair market value of the parcel of land remaining after the taking. See Aselbekian v. Massachusetts Turnpike Auth., 341 Mass. 398, 400 (1960); Valentino v. Commonwealth, 329 Mass. 367, 368 (1952). Fair market value is “the highest price which a hypothetical willing buyer would pay to a hypothetical willing seller in an assumed free and open market.” Correia v. New Bedford Redevelopment Auth., 375 Mass. 360, 361 (1978). In determining fair market value of a whole parcel, all uses to which the property may reasonably be put may be considered. See Tigar v. Mystic River Bridge Auth., 329 Mass. 514, 517 (1952); Smith v. Commonwealth, 210 Mass. 259, 261 (1911). See also Ford v. Worcester, 339 Mass. 657, 662-63 (1959) (highest and best use of land considered merely for bearing on market value). However, in calculating the fair market value of the parcel, “a person whose land is taken for public use cannot recover the enhancement in value due to the improvement for which the land is taken.” Cole v. Boston Edison Co., 338 Mass. 661, 665-66 (1959).
Frontage contends that the value of the City Taking, which was the remainding parcel in the Commonwealth Action, is $11,000,000. It further contends that this court should exclude testimony by its expert Coleman in the first action that the parcel was worth only $7,150,000 based on its highest and best use as industrial warehouse space. Frontage argues that when valuing the remainder parcel in the Commonwealth Action, Coleman was prevented from testifying that the highest and best, use for this parcel was as a laydown area for contractors working on the CA/T Project. Use as a laydown area was within "the scope of the project” for which the Commonwealth took the land and, therefore, Frontage could not consider this use in valuing the remaining parcel. According to the scope of the project rule, if a scheme of public improvement contemplated the taking of an owner’s land, and that land is subsequently taken in connection with the public improvement, the owner is not entitled to recover the enhanced value of the land resulting from its location in the vicinity of the improvement. See Cole, 338 Mass. at 666 (citing May v. Boston, 158 Mass. 21, 31 (1893)); Smith, 210 Mass. at 263.[1] The scope of the project rule, however, does not apply here.
The scope of the project rule applies in situations where land is actually taken in connection with the project. See Cole, 338 Mass. at 665-66. The rule says nothing about how to valúate land that remains after a taking. When determining the value of a tract after the government has taken part of it, “the first step is to determine the best use to which the remaining tract could have been put or can be put in the future." 7 A Nichols on Eminent Domain (3rd ed.), §12.03(2)(a) (emphasis added). After the Commonwealth Taking, the best use for which Frontage could have used the remaining parcel was as office space for contractors on the CA/T Project. In determining just compensation, increases in the value of land attributable to a project, when it is reasonably expected that the land will not be taken for such project, must be considered. See 4 Nichols on Eminent Domain (3rd ed.), §12B.17(8)(b). Plaintiff produced no evidence that the Commonwealth ever contemplated taking the remaining parcel for use in the CA/T Project. Therefore, the scope of the project rule did not prevent Frontage from arguing in the Commonwealth Action that the highest and best use of the remaining parcel was for office space in connection with the CA/T Project.
Frontage further argues that the creation of a market demand for a contractor laydown area is a general benefit to all land in the area of the Commonwealth Taking, and therefore it would have been incorrect to *123 use this benefit to offset the damages the Commonwealth owed to Frontage. When determining the compensation due to an owner when the government takes only a piece of land, the damages owed are offset by the direct, special, and peculiar benefits accruing to the remaining piece of land as a result of the taking. See Hilbourne v. Suffolk, 120 Mass. 393, 393 (1876). See also Inst. for Savings in Newburyport v. Brookline, 220 Mass. 300, 306 (1915) (if owner’s property has been benefitted by taking, damages could be offset by benefits); Mitchell v. City of Boston, 215 Mass. 150, 152 (1913) (in ascertaining compensation for a taking, consideration of benefits conferred to remaining land is as essential an element as consideration of injury caused). However, a general benefit accruing to all lands in the neighborhood because of the taking may not be used to offset damages. See Hillbourne, 120 Mass. at 394. “The kind of benefit which is not allowed to be estimated for the purpose of such deduction, is that which comes from sharing in the common advantage and convenience of increased public facilities, and the general advance in value of real estate in the vicinity by reason thereof.” Allen v. Charlestown, 109 Mass. 243, 246 (1871). See also Parks v. Hampden, 120 Mass. 395, 397 (1876).
Frontage argues that potential use of its remaining land as a laydown area was a general benefit because owners of other parcels of land in the vicinity could similarly use their land after the Commonwealth Taking. A benefit is not any less special, however, just because other land in the area of the taking, in addition to the owner’s land, are benefitted in a similar manner from the taking. See Abbott v. Cottage City, 143 Mass. 521, 526 (1887); Cross v. Plymouth, 125 Mass. 557, 558 (1878); Allen, 109 Mass. at 246. In this case, Frontage gained a direct and special benefit from the Commonwealth Taking. Therefore, the parties in the Commonwealth Action could have argued the potential of the remainder parcel for use as a laydown area for CA/T Project contractors.
Frontage also contends that in the City Action, this court should deem Coleman’s testimony in the Commonwealth Action inadmissible because it would highly prejudice Frontage. In that action, however, nothing prevented Coleman from testifying that the highest and best use of the remaining parcel was as office space for CA/T contractors and calculating the value of the remainder parcel on that basis. If Frontage seeks to have Coleman take a position in the City action which is inconsistent with the one he took in the Commonwealth Action, the City may cross-examine him on these conflicting statements. See Robinson v. Old Colony Street Railway, 189 Mass. 594, 596 (1905); Longo v. Bd. of Appeals of Malden, 6 Mass.App.Ct. 835, 835 (1978) (proper to allow evidence that plaintiff assigned lower value to property in application for abatement to impeach him); Cohen v. Boston Redevelopment Auth., 5 Mass.App.Ct. 784, 785 (1977) (no abuse of discretion in allowing question to impeach credibility of land valuation witness who had testified to a lower figure at auditor’s hearing). Therefore, this court will not exclude Coleman’s prior testimony in the Commonwealth Action concerning the highest and best use for the remainder parcel and his opinion on the value of that parcel.
B. Prior Jury Valuation
Frontage next contends that it is improper for this court to allow the jury valuation of the remainder parcel in the Commonwealth Action as evidence of the value of the parcel at the time of the City Taking. A lapse in time between the valuation of a piece of land and a government taking of that parcel does not render the valuation per se irrelevant. See Lembo v. Town of Framingham, 330 Mass. 461, 463 (1953) (evidence of purchase price of parcel four years before taking properly admitted). The fact that the City Taking was eight months after the Commonwealth Taking does not render the jury’s valuation of the remainder parcel irrelevant.
To support its position that this court should exclude the prior jury valuation, plaintiff relies on the proposition that if the value of a parcel of land has been fixed by a jury, this valuation is inadmissible as evidence of the fair market value of the land. See Wyman v. Lexington & West Cambridge Rail Road Co., 13 Met. (54 Mass.) 316, 326 (1847). The rationale underlying Wyman is that for evidence of a comparable sale to be admissible, the sale must be freely and voluntarily made, not made while acting under compulsion, and a jury valuation is not freely made. See Amory v. Commonwealth, 321 Mass. 240, 256 (1947). However, all of the cases that stand for this proposition deal with a jury valuation, arbitrator’s award, or sale of adjacent or neighboring land. See id.; Howe v. Howard, 158 Mass. 278, 278-79 (1893); White v. Fitchburg Rail Road. Corp., 4 Cush. (58 Mass.) 440, 440 (1849); Wyman, 13 Met. at 326.
A price so fixed [by a jury] represents only the opinion of those who make it, and, as the grounds and reasons of their opinion are not known, and they cannot be presumed to have been qualified experts, and cannot be subjected to cross-examination by the parties whose rights the evidence will affect, their opinion is not competent to show the value of other land.
Howe, 158 Mass. at 279 (emphasis added).
The present case is distinguishable. At issue in this action is the value of land taken by the City. This same parcel was valued at $6,023,000 by a jury in the Commonwealth Action. Courts have discretion whether to admit evidence of a prior sale of the piece of land at issue. See Fitzgerald v. Boston Redevelopment Auth., 357 Mass. 766, 766 (1970); Brush Hill Development, Inc. v. Commonwealth, 338 Mass. 359, 365 (1959); Lembo, 330 Mass. at 463; Keating v. *124 Duxbury Housing Auth., 11 Mass.App.Ct. 934, 935 (1981)., The judge should consider whether the sale of the property was so remote in time to the government taking that it affords no indication of the value of the land at the time of the taking. See Lembo, 330 Mass. at 463. Here, eight months separated the Commonwealth Taking from the City Taking. Therefore, the value the jury placed on the remainder parcel in the Commonwealth Action is relevant as some evidence of the value of parcel at the time of the City Taking, and the court will not exclude it.
C. Non-Mutual Defensive Collateral Estoppel
Finally, the City argues that Frontage should be estopped from relitigating the property valuation issue in this action because the jury made a valuation of the parcel in the Commonwealth Action. A party may invoke the doctrine of collateral estoppel when five conditions are met: (1) an issue of fact or law was actually litigated in a prior action; (2) the issue of fact or law was determined by a valid and final judgment; (3) the party whom the litigated issue is binding upon was a party, or in privity with a party, in the prior action; (4) the party had a full and fair opportunity in the first action to litigate the issue for which preclusion is sought; and (5) the determination of the issue was essential to the decision in the prior adjudication. See Tuper v. North Adams Ambulance Service, Inc., 428 Mass. 132, 134-35 (1998); Heacock v. Heacock, 402 Mass. 21, 25 (1988); Martin v. Ring, 401 Mass. 59, 61 (1987) (citation omitted). The purpose of collateral estoppel is to prevent the unnecessary costs associated with multiple litigation, ensure the finality of judgments, prevent inconsistent decisions, and conserve judicial resources. See Martin, 401 Mass. at 61; Massachusetts Property Ins. Underwriting Assn. v. Norrington, 395 Mass. 751, 756 (1985); Fidler v. E.M. Parker Co., 394 Mass. 534, 539-40 (1985).
Massachusetts recognizes non-mutual defensive collateral estoppel. See O’Brien v. Hanover Ins. Co., 427 Mass. 194, 201-02 n.5 (1998). A defendant in action two, who was not a party, or in privity with a party, in action one may use the doctrine of issue preclusion defensively against a plaintiff who was a party in the first action, as long as the above conditions are met. See O’Brien, 427 Mass. at 201-02 n.5; Martin, 401 Mass. at 61; Home Owners Fed. Sav. & Loan Assn. v. Northwestern Fire & Mar. Ins. Co., 354 Mass. 448, 455 (1968). In applying non-mutual defensive collateral estoppel, the core inquiry is “whether the issue on which preclusion is sought has been ‘the product of full litigation and careful decision.’ ’’ Bailey v. Metropolitan Property & Liability Ins. Co., 24 Mass.App.Ct. 34, 36 (1987), rev. den. 400 Mass. 1101 (1987), quoting Home Owners Fed. Sav. & Loan Assn., 354 Mass. at 455. The party asserting issue preclusion has the burden of showing that the issue was actually decided or necessary to the decision in the prior action. See id. at 37. The party against whom issue preclusion is sought has the burden of showing that he did not previously have a full and fair opportunity to litigate the issue. See id.
Frontage was the plaintiff in the Commonwealth Action. Valuation of the remainder parcel in that action was essential to the case because the fair market value of the parcel the Commonwealth took was calculated by taking the fair market value of the Frontage Property before the taking, and subtracting the value of the remainder parcel after the taking. The jury in the Commonwealth Action concluded that the remainder parcel, subsequently taken by the City, was worth $6,023,000. This represents a final and valid judgment on the merits. Despite arguments to the contrary, Frontage did have a full and fair- opportunity to litigate the value of the remainder parcel in the first action. They were not legally precluded from arguing that the highest and best use for the remaining portion of land was as office space for contractors on the CA/T Project. The fact that Frontage did not actually make this argument in the Commonwealth Action does not change the fact that it had a full and fair opportunity to do so.
While four of the conditions for application of collateral estoppel are present, the issue decided in the Commonwealth Action is not identical to the issue presented in the City Action. The damages calculation for the governmental taking of property by eminent domain requires determination of the fair market value of the property immediately before the order of taking and the fair market value of the remainder parcel after the taking. See G.L.c. 79, §12; Newton Girl Scout Council, Inc. v. Massachusetts Turnpike Auth., 335 Mass. 189, 193 (1957); Moulton v. Newburyport Water Co., 137 Mass. 163, 167 (1884). In the Commonwealth Action, the value of the remainder parcel was calculated right after the Commonwealth Taking on July 27, 1995. The value of the same parcel must now be calculated in relation to the City Taking on March 29, 1996. Because there was an eight-month difference between the two takings, the valuation of the parcel ultimately taken by the City on March 29, 1996 was not actually litigated in the Commonwealth Action. Therefore, because the City has not met all of the requirements to invoke non-mutual defensive collateral estoppel, Frontage is not estopped from relitigating the value of the parcel taken by the City.
ORDER
For the foregoing reasons, it is hereby ORDERED that Frontage Development Corporation’s motion to exclude and limit evidence regarding its expert’s valuation of the parcel of land in the Commonwealth Action, based on the highest and best use as a industrial warehouse space, and the jury valuation of the parcel in that action is DENIED; and
It is further ORDERED that the City of Boston’s motion in limine to estop Frontage Development Corporation from relitigating the issue of the parcel’s *125 value as determined by the jury in the Commonwealth Action is DENIED.

 The Supreme Court defined the scope of the project rule in United States v. Miller, 317 U.S. 369, 379 (1943):
If [the subject lands] were within the area where they were likely to be taken for the project, but might not be, the owners were not entitled, if they were ultimately taken, to an increment of value calculated on the theory that if they had not been taken they would have been more valuable by reason of their proximity to the land taken.